UNITED STATES of America,
Plaintiff–Appellee,

v.

William J. MOORE,
Defendant–Appellant.

No. 89–3199.

United States Court of Appeals,
Tenth Circuit.

Nov. 29, 1990.

J. Steven Schweiker, Overland Park, Kan., for defendant-appellant.

Julie A. Robinson, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with her on the brief), Kansas City, Kan., for plaintiff-appellee.

Before McKAY and BALDOCK, Circuit Judges, and COOK,* District Judge.

H. DALE COOK, District Judge.

William J. Moore was convicted by a jury of one count of possession of 51.4 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of the use of a firearm in relation to possession with intent to distribute in violation of 18 U.S.C. § 924(c), and one count of the use of a machine gun in relation to drug trafficking in violation of 18 U.S.C. § 924(c).

Moore raises several issues on appeal. Moore challenges the imposition of consecutive sentences on the two counts charging violations of 18 U.S.C. § 924(c) as violative of the double jeopardy clause of the Constitution, in that the count charging the use of a firearm and the count charging the use of a machine gun are duplicative. Moore next questions the sufficiency of the evidence to support the jury's verdict that the Sten machine gun and the other three firearms found in his apartment facilitated the predicate offense of possession of cocaine with intent to distribute. Moore also questions whether the affidavit submitted to obtain the search warrant alleged sufficient facts to establish probable cause for the issuance of that warrant. Finally, Moore challenges as improper the district court's upward adjustment of his sentence two levels as a leader or organizer, pursuant to Sentencing Guideline § 3B1.1. For the reasons set forth below, we vacate in part and remand for resentencing on the firearms counts, and affirm as to all other issues.

---

* The Honorable H. Dale Cook, Chief Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

## I.

An undercover surveillance operation was conducted in September and October, 1988, by a Special Investigative Division of the Johnson County, Kansas Sheriff's Office, targeting narcotics trafficking. The investigation initially centered on Dale Willeford for possible drug trafficking. (R.Supp. I, p. 13). An investigator with the Division, Richard Stutzman, made two controlled buys from Willeford on October 11 and 13, 1988. (*Id.* at 16–17). In conversations with Stutzman, Willeford indicated that his "source" for the cocaine he sold to Stutzman was "a short distance away" and that his "source" could "always take care of me." (*Id.* at 18). Willeford was followed by other police officers to an apartment at the Georgetown Apartment complex in Merriam, Kansas. (*Id.* at 15). Willeford was observed entering Apartment 107 at 7100 Eby Drive, which was leased to defendant Moore. Continued surveillance of apartment 107 noted codefendant Larry Rogers frequently entering and leaving the apartment. At one point, Stutzman attempted to stop Rogers near the apartment to buy cocaine. Rogers told Stutzman that he had no drugs to sell, but accepted a phone number from Stutzman to call later. (*Id.* at 20–21). Rogers never contacted Stutzman, but Willeford later warned Stutzman to stay away from his "source". (*Id.* at 22).

Stutzman executed an affidavit, detailing his contacts with Willeford and his belief that Willeford's "source" was to be found at apartment 107, 7100 Eby Drive, Merriam, Kansas. Based upon that affidavit, a search warrant was obtained for the above address.

Rogers answered the door and allowed police officers serving the search warrant to enter the apartment. (R.Supp. II, p. 233). The apartment was small, with one bedroom. (*Id.* at 264). Moore was in the hallway leading into the bedroom when the officers entered. (*Id.* at 234).

In their search of the apartment, the officers seized 51.4 grams of cocaine, packaged in fifteen small Ziploc plastic bags. The officers also seized a weighing scale, small and large Ziploc plastic bags, snow seals for gram-size packages, dealing records and calculator receipts with initials next to amounts owed, all of which were alleged at trial to be indicative of distributing cocaine. (R.Supp. I, p. 35–36, 50–51). All these items, as well as $3,400 in currency, were recovered from the bedroom. From the living room, the officers seized a bong pipe and a mirror with cocaine residue and a razor blade on it. (*Id.* at 53–54).

The officers also seized several firearms during the execution of the search warrant. A loaded Ruger semi-automatic rifle was propped up on the floor of an open linen closet in the hallway leading to the bedroom. (*Id.* at 65). A loaded Jennings .22 handgun was found under the sofa cushions in the living room, where Rogers apparently had been lying. (*Id.* at 63). A loaded Smith & Wesson handgun was found in the bedroom, on the nightstand next to the bed. (*Id.* at 66). A loaded, British Sten machine gun was in an open closet in the bedroom. (*Id.* at 67). Ammunition for the machine gun and the other firearms was found in that same bedroom closet. (*Id.* at 59, 77).

At trial, several witnesses testified that they had purchased cocaine from Moore. (R.Supp. II, p. 119, 217; R.Supp. III, p. 312). These witnesses testified that they had seen various firearms in the apartment while purchasing cocaine there. (R.Supp. II, p. 121, 218; R.Supp. III, p. 313). Their testimony also indicated that generally Rogers would answer the door for cocaine purchasers. (R.Supp. II, p. 123, 199; R.Supp. III, p. 311). The actual purchases were usually made in the bedroom of the apartment. (R.Supp. II, p. 123; R.Supp. III, p. 312). Three witnesses testified that they purchased cocaine from Rogers, at the apartment, when Moore was unavailable. (R.Supp. II, p. 200, 217; R.Supp. III, p. 338).

Moore was tried by jury on a four-count superceding indictment, charging him with the following offenses:

Count 1 Possession with intent to distribute 51.3 grams of cocaine on October 14, 1988.

Count 2 Using a Jennings .22 handgun, a Ruger 10/22 .22 caliber rifle, and a Smith & Wesson 9mm handgun during and in relation to the possession with intent to distribute cocaine count charged in Count 1.

Count 3 Distributing 27 grams of cocaine on March 11, 1988.

Count 4 Using a Sten machine gun during and in relation to the drug trafficking crime alleged in Count 1.

The jury returned a guilty verdict on Counts 1, 2 and 4, and a not guilty verdict on Count 3. The trial court denied Moore's motion for judgment of acquittal and sentenced him to 33 months on Count 1, five years on Count 2, consecutive to his sentence on Count 1, and ten years on Count 4, consecutive to his sentence on Counts 1 and 2. Moore then filed a timely appeal with this court.

## II.

■■■ This court recently has addressed the question of whether a conviction for a single drug trafficking offense will support the imposition of consecutive sentences under 18 U.S.C. § 924(c) for multiple firearms carried or used in connection with that single offense. In *United States v. Henning,* 906 F.2d 1392 (10th Cir.1990), the defendant was convicted of one count of possession of a controlled substance with intent to distribute and of two counts of using a firearm during and in relation to a drug trafficking offense. At the time of his arrest, Henning had a semi-automatic pistol under his jacket; a machine gun, a rifle, a

pistol (all of which were loaded), ammunition and over twenty grams of methamphetamine were found in Henning's vehicle. *Id.* at 1394–95. Henning was sentenced· to two counts involving the machine gun and the other firearms.[1] *Id.* at 1395. This court vacated the sentences on the two firearm counts against Henning and remanded for resentencing. The court stated that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized." *Id.* at 1399.

*Henning* controls our disposition of the same issue in this case. Because Moore was convicted of only one underlying drug trafficking offense, we vacate the sentences imposed on the second and fourth counts and remand for resentencing.

## III.

. Moore challenges the sufficiency of the evidence to support the jury's verdict on Count 4 that he used the Sten machine gun during and in relation to his offense of possession of cocaine with intent to distribute. Moore contends that he merely possessed the machine gun, which, while visible in the bedroom closet, was not quickly and easily accessible to him. Moore also points to evidence that the machine gun malfunctioned, and to testimony from Willeford that the gun never caused him concern while at Moore's apartment.[2]

1. Henning was convicted under the same version of 18 U.S.C. § 924(c) as was Moore. That statute provides, in pertinent part:

> Whoever, during and in relation to any ... drug trafficking crime, [ ] including a drug trafficking crime, which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years, and if the firearm is a machinegun, ... to imprisonment for ten years.

18 U.S.C. § 924(c)(1) (1987). As noted in *Henning,* the penalties under that subsection have increased significantly since 1987. If the fire-

arm is a machinegun, the mandatory consecutive sentence for a first-time conviction is twenty years.

2. Moore also argues that the evidence did not indicate the presence of large quantities of drugs or cash in his apartment, thereby rendering a "fortress" analogy inapplicable here. The "fortress" analogy apparently derives its name from the Second Circuit's description of a building filled with drugs, firearms and elaborate security precautions as a "veritable fortress," in *United States v. Grant,* 545 F.2d 1309, 1312 (2d Cir.1976). *See United States v. Wilson,* 884 F.2d 174, 177 (5th Cir.1989) ("fortress theory" applies when large numbers of firearms are readily available in strategic locations near large quantities of drugs and money); *United States v.*

Our standard of review of the sufficiency of the evidence in criminal convictions is whether the evidence "both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. McKinnell*, 888 F.2d 669, 673 (10th Cir. 1990).

█ Mere possession of the machine gun cannot support a conviction under section 924(c). The government must demonstrate some relation between the "use" of the firearm and the underlying crime. *United States v. Feliz–Cordero*, 859 F.2d 250, 254 (2d Cir.1988). However, the government need not prove that Moore fired, brandished, or even displayed the machine gun during the drug trafficking offense. *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989). In *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985), the court noted:

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such a display or discharge in fact occurred, then there is a violation of the statute.

*Id.* at 540.

█ Other courts have found firearms to have been "used" under section 924(c) when the firearms were "a means of safeguarding and facilitating illegal transactions and as an integral means of protecting [defendant's] possession of the cocaine." *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir.1988). *See also United States v. Meggett*, 875 F.2d 24, 29

(2d Cir.1989) (five loaded firearms were "used" to protect supply of narcotics); *United States v. Matra*, 841 F.2d 837, 841 (8th Cir.1988) (machine gun's availability increased likelihood of success of criminal undertaking).

In this case, the jury reasonably could have concluded that Moore "used" the machine gun as a means of safeguarding and facilitating his possession of cocaine. The machine gun was visible within the bedroom, where, as the testimony indicated, most of the cocaine purchases were made. Several witnesses testified that they saw the machine gun in Moore's bedroom while purchasing cocaine there. The evidence established that the machine gun was within relatively close proximity to Moore's supply of cocaine and cash. The jury thus could have inferred that the machine gun "emboldened" Moore, providing him with protection for himself, the cocaine and the cash if the need arose.[3] Although Moore claims that the machine gun was not quickly and readily accessible to him from the bedroom closet, the jury apparently believed otherwise.

The evidence also could have persuaded the jury that the machine gun had value in intimidating Moore's customers. Although Willeford testified that the machine gun in the bedroom did not cause him concern, two of Moore's other customers testified that they had noticed the machine gun while purchasing cocaine, and were able to specifically identify the machine gun as the one they had seen in the bedroom. From that testimony, the jury could have inferred that the machine gun drew the customers' attention, and thus had some worth in deterring inimical conduct by Moore's customers.

Moore's argument is unpersuasive that the machine gun's malfunction should nullify any finding of his "use" of that firearm

---

*Matra*, 841 F.2d 837, 842 (8th Cir.1988) (comparing similarities of the "fortress" there with that in *Grant*).

However, a "fortress" analogy is not needed here to find that Moore "used" the machine gun, pursuant to section 924(c).

3. Moore testified at trial that he purchased the Smith & Wesson handgun for protection, after he was "mugged" at a convenience store, in May 1987. Moore also testified that he kept the guns for protection of the cash settlement he received from an auto accident, and admitted that he kept a lot of cash "on hand."

in connection with the underlying crime of possession of cocaine. At trial, a firearms expert testified that the machine gun would fire two or three rounds with one pull of the trigger, and then cease to fire at all. In *United States v. Coburn*, 876 F.2d 372 (5th Cir.1989), however, the court noted that "[t]he fact that a firearm is 'unloaded' or 'inoperable' does not insulate the defendant from the reach of section 924(c)." *Id.* at 375. In *Coburn*, the defendant was convicted under section 924(c), even though the rifle displayed in the truck window was unloaded. *Id.* at 373. *See also United States v. York*, 830 F.2d 885, 891–92 (8th Cir.1987) (Section 924(c) held applicable where firearm was inoperable for lack of a firing pin); *United States v. Gonzalez*, 800 F.2d 895, 899 (9th Cir.1986) (No requirement in section 924(c) that firearm be loaded or operable).

Moore also questions the sufficiency of the evidence supporting the verdict on Count 2 for use of the other firearms in connection with possession of cocaine with intent to distribute. Moore concedes that the evidence was sufficient to support a guilty verdict on the loaded Smith & Wesson handgun, found on the bedroom nightstand, near the cash, cocaine and drug paraphernalia. However, Moore contends that the evidence must show the "use" of *all* of the firearms seized to support a conviction under section 924(c), relying upon *United States v. Theodoropoulos*, 866 F.2d 587 (3rd Cir.1989). We disagree with Moore's reading of that decision.

In *Theodoropoulos*, a loaded shotgun was found inside the defendants' apartment, and three handguns and ammunition were found on the apartment's porch in a trash can. *Id.* at 596. One of the handguns was disassembled. Although it found that the shotgun was used in connection with the underlying offense, the Third Circuit was troubled by the indictment and a jury instruction that predicated a conviction under section 924(c) upon any of the guns seized, including the three found outside in the trash can. *Id.* at 598. The Third Circuit vacated a defendant's conviction under section 924(c) because of the possibility that the jury might have convicted that defendant solely on the basis of one or more of the handguns found in the trash can, and remanded for a new trial based only on the presence of the shotgun. *Id.*

The indictment and jury instructions here also permitted the jury to base a conviction on any of the three firearms found in Moore's apartment. However, the evidence showed that the Ruger rifle and the Jennings handgun were loaded and operational, and given the compactness of the apartment, were readily accessible to Moore. Thus, even if the jury considered the other two firearms, and not the Smith & Wesson handgun, in finding Moore guilty on Count 2, the evidence supported Moore's use of those two firearms in connection with his possession of cocaine with intent to distribute.

### IV.

Moore contends that the affidavit given to obtain the search warrant for his apartment contained conclusions without factual support. Specifically, Moore complains of a lack of facts in the affidavit to connect his apartment to Willeford's source for cocaine and to show that cocaine transactions were actually consummated. Moore argues that the conclusionary statements should be stricken from the affidavit; the redacted affidavit then does not provide probable cause for the issuance of the search warrant.

Moore raised essentially the same argument of the affidavit's lack of fact to the trial court in a motion to suppress the physical evidence seized pursuant to the search warrant. The trial court denied that motion. In reviewing that denial, we accept the trial court's findings of fact, unless clearly erroneous, but review *de novo* the "ultimate determination of reasonableness under the fourth amendment." *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir.1990).

We find no error in the trial court's denial of Moore's motion to suppress. Sufficient details are presented in the affidavit of the underlying circumstances upon which the affiant based his belief that

Willeford's "source" was to be found at the apartment leased by Moore, and that cocaine transactions were taking place there. Bearing in mind that affidavits such as this, "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," we will not examine this affidavit in a "hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965).

## V.

Finally, Moore contends that the trial court improperly applied Sentencing Guideline § 3B1.1(c) to the facts to adjust Moore's sentence two levels upward for his role in the offense as a leader or organizer.[4] In making that upward adjustment, the trial court relied upon its notes made during the trial and the presentence report, which concluded that (1) Moore distributed cocaine out of his apartment, (2) that Moore led co-defendant Rogers, and (3) that Moore led his customers, who in turn sold smaller quantities of cocaine to others. We examine that factual determination under the clearly erroneous standard. *United States v. Rutter*, 897 F.2d 1558, 1563 (10th Cir.1990).

 This court's decision in *United States v. Backas*, 901 F.2d 1528 (10th Cir. 1990) is particularly relevant here. In *Backas*, the district court adjusted the defendant's sentence two levels upward under Sentencing Guideline § 3B1.1(c) for his role in the offense as a leader or "supervisor", based upon evidence that the defendant regularly sold drugs from a particular house, and that another person was in effect the defendant's "doorman" who let the customers in and screened them, for which he was paid by the defendant. *Id.* at 1529. This court affirmed the trial court's application of § 3B1.1(c), concluding that that subsection and the term "supervisor" are "satisfied upon a showing that the defendant exercised any degree of direction or control over someone subordinate to him in

the distribution scheme." *Id.* at 1530. Describing the "doorman" 's role as "trivial", this court found it nevertheless satisfied the requirements for defining the defendant as the "doorman" 's supervisor. *Id.*

From our review, we find support in the record for the trial court's characterization of Moore as a "leader" or "organizer" for purposes of Sentencing Guideline § 3B1.1. Although, unlike *Backas*, the record reflected no payment to Rogers for his services, the evidence demonstrated that Rogers did provide "doorman" services for Moore and acted at Moore's direction. All witnesses testified that Rogers would answer the door for them when they sought to purchase cocaine from Moore. Three of the witnesses testified that they bought cocaine from Rogers at the apartment when Moore could not be reached there. Rogers' subordinate role to Moore may thus be inferred, in that Rogers was able to sell Moore's cocaine for him in his absence, but that Moore alone handled the cocaine sales when he was at the apartment. Other evidence showed that Moore rented the apartment and set up his base of operations in the bedroom.

 The evidence indicated that two of Moore's customers resold cocaine they had purchased from Moore. The trial court included these two customers as among those led by Moore, in adjusting his sentence pursuant to § 3B1.1(c).

Recently, we have held that the mere sale of drugs to a customer does not prove the defendant's status as a supervisor or leader under § 3B1.1. *See United States v. Reid*, 911 F.2d 1456, 1465 (10th Cir.1990); *United States v. Mays*, 902 F.2d 1501, 1503 (10th Cir.1990) (citing *United States v. Weidner*, 703 F.Supp. 1350, 1354 (N.D.Ind. 1985)). Our review of the record here found no evidence that Moore exercised any authority, direction or control over his two customers' resale of the cocaine purchased from him. Instead, the evidence indicated that Moore was only a source for

---

4. Sentencing Guideline § 3B1.1(c) provides that if the defendant was an "organizer, leader, manager, or supervisor in any criminal activity" that involved less than five participants, his sentence shall be increased by two levels.

cocaine for his customers, who chose to personally use the drug or to resell it, without interference from Moore. The trial court thus erred in including these two customers as among those led by Moore. However, we deem that error to be harmless, having found that Moore supervised Rogers to support the trial court's upward adjustment of Moore's sentence under § 3B.1 of the Sentencing Guidelines.

In conclusion, we VACATE the sentences imposed on the second and fourth counts and REMAND for resentencing under 18 U.S.C. § 924(c)(1) in accordance with this opinion. We AFFIRM as to all other issues.