986 F.2d 1431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest L. SCHICKLING, Defendant-Appellant.
 No. 92-4013.
 United States Court of Appeals, Tenth Circuit.
 Jan. 26, 1993.
 
 1
 Before LOGAN and TACHA, Circuit Judges, and CAUTHRON, District Judge*.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 Defendant-Appellant Ernest Lee Schickling pleaded guilty to aiding and abetting the manufacture of a controlled substance in violation of 21 U.S.C. § 841(a)(1). The United States District Court for the District of Utah sentenced him to a period of 151 months imprisonment and six years supervised release. Schickling now contests that sentence. We exercise jurisdiction under 18 U.S.C. § 3742 and affirm.
 
 I.
 
 4
 This appeal arises out of a drug bust executed on April 14, 1991 by the Drug Enforcement Administration ("DEA"). During all relevant times up until his release on April 13, 1991, Mr. Schickling was completing a prior drug-related sentence at a halfway house. While standing practically at the brink of freedom, however, Schickling secured his almost immediate return to prison by spearheading a scheme to manufacture methamphetamine.
 
 
 5
 Following his arrest the day after his release from the halfway house, Schickling pleaded guilty to aiding and abetting the manufacture of a controlled substance--P2P--under § 841(a)(1). Based on a production capacity of methamphetamine between three and ten kilograms, and after an upward adjustment of two offense levels for Schickling's status as "organizer, leader, manager, or supervisor" of the criminal activity under § 3B1.1(c) of the United States Sentencing Guidelines ("U.S.S.G."), the district court arrived at an offense level of 34. Because of Schickling's two prior drug convictions, the court arrived at a criminal history category of VI. The court then departed downward five offense levels under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The resulting guidelines range was 151 to 188 months; the court sentenced Schickling to the minimum of 151 months.
 
 
 6
 On appeal, Schickling alleges four sentencing errors: (1) the upward adjustment for "organizing" criminal behavior was erroneous; (2) the court failed to depart downward based on Schickling's poor health; (3) the criminal history category of VI was erroneous because Schickling's prior convictions did not warrant a finding that he was a "career offender"; and (4) Schickling's sentence was disproportionate to those received by his codefendants. We review the district court's application of the sentencing guidelines to the facts of a particular case with due deference, while reviewing questions of law de novo. United States v. Shewmaker, 936 F.2d 1124, 1126 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 884, 116 L.Ed. 788 (1992). "Regarding factual determinations made by the district court, we apply a 'clearly erroneous' standard of review." Id.
 
 II.
 
 7
 We first address Schickling's claim that the sentencing court erroneously adjusted upward under § 3B1.1(c) for his role as the organizer or leader of the methamphetamine lab. Section 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." United States Sentencing Commission, Guidelines Manual, § 3B1.1(c) (Nov.1992). In applying this provision, the sentencing court must consider only the defendant's role in the offense for which he is convicted, not his role in any other criminal activity. United States v. Pettit, 903 F.2d 1336, 1341 (10th Cir.1990), cert. denied, 111 S.Ct. 197 (1991).
 
 
 8
 The government concedes that Schickling did not himself manufacture any of the substances underlying the instant offense. Moreover, the guilty plea is limited to aiding and abetting in the manufacture of the methamphetamine precursor, P2P. We thus examine whether Schickling was the organizer or leader of the manufacture of P2P.
 
 
 9
 Schickling contends that the government has no evidence of any "leadership" vis-a-vis P2P, the substance actually manufactured. He contends that the court instead relied on his prior criminal activities and on evidence that he intended to manufacture methamphetamine in finding him to be an organizer under § 3B1.1(c). At Schickling's sentencing hearing, the district court "rel[ied] on the Presentence Report, factual matters and the other materials that [he] received." The record does include information that, strictly speaking, is not relevant to Schickling's role vis-a-vis the P2P. For example, the government incorporated Schickling's self-professed stature as "the last great chef" and his statements regarding the manufacture of the final product, methamphetamine.
 
 
 10
 Since Pettit, however, this court has held that "a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments." United States v. Saucedo, 950 F.2d 1508, 1513 (10th Cir.1991). Accordingly, the government presented substantial evidence regarding Schickling's role as organizer and leader of the entire operation. In March, 1991, Schickling's wife contacted a confidential informant seeking to locate a suitable lab site. She told him that she already had produced P2P and methamphetamine and that "she and her husband intended to continue the operation upon his release from the state halfway house." Another resident at the halfway house testified that Schickling had threatened him into providing a suitable lab site. On April 5, 1991, the informant met with both Mr. and Ms. Schickling. At that time, Schickling stated that the early stages of production were complete and that they would be finishing the process on April 9, 1991. The government then presented an abundance of evidence relating to Schickling's activities regarding the lab while he was on a weekend release and after his release from the halfway house on April 13, 1991.
 
 
 11
 Because the district judge did not explicitly state the factors on which he determined that Schickling was the organizer or leader of the P2P manufacturing, we could remand this issue to the district court with instructions to consider whether it would have reached the same result without the impermissible information. See United States v. Padilla, 947 F.2d 893, 895 (10th Cir.1991). It is obvious on this record, however, that, even after excluding all of the evidence relating to Schickling's expertise as a methamphetamine cook, the district court had sufficient evidence to determine that Schickling was the organizer and leader of the entire operation, which necessarily included the manufacture of the precursor, P2P. Therefore, any error made in this regard was harmless. See United States v. Moore, 919 F.2d 1471, 1478 (10th Cir.1990).
 
 
 12
 Schickling also appears to argue that, because he was residing in the halfway house and was under twenty-four hour supervision, he could not possibly have been the organizer or leader of this criminal enterprise. We disagree. Section 3B1.1(c) does not expressly exclude supervised individuals. We already have discussed Schickling's role in the entire manufacturing operation. While the concept is admittedly discomforting, we cannot say that the district court's determination that Schickling succeeded in organizing the manufacture of P2P from the government-supervised halfway house was clearly erroneous.
 
 
 13
 Schickling next challenges the district court's failure to depart downward under U.S.S.G. § 5H1.4 based on Schickling's medical condition. Even conceding that Schickling has an extraordinary physical impairment, "[i]t is established law in this circuit, and in every circuit which has considered the jurisdictional issue, that an appellate court does not have jurisdiction to review a district court's discretionary refusal to depart downward from the sentencing guidelines." United States v. McHenry, 968 F.2d 1047, 1048 (10th Cir.1992).
 
 
 14
 Although Schickling attempts to rescue this issue from jurisdictional demise by arguing that the district judge was unable to properly exercise its discretion because it failed to conduct an evidentiary hearing on the issue, that argument is without merit. When the district judge discretionarily departed from the guidelines for other reasons, he expressly referred to Schickling's "serious medical problems" and found further departure to be "unwarranted." Schickling's attempt to recast the issue into a claim that the district court incorrectly applied the guidelines based on a lack of information or understanding thus does not withstand scrutiny. See United States v. Bromberg, 933 F.2d 895, 897 (10th Cir.1991). The district court was aware of the issue, determined that it had enough information on which to exercise its discretion, and acted accordingly. We therefore lack jurisdiction to review that determination.
 
 
 15
 Schickling next challenges his criminal history category. In order to be sentenced as a career offender under § 4B1.1,
 
 
 16
 (1) the defendant [must be] at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction [must be] a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant [must have] at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 17
 U.S.S.G. § 4B1.1. Schickling has two prior convictions for drug-related offenses. In 1984, he was convicted of the manufacture of a controlled substance (marijuana) and sentenced to ninety days in jail and three years probation. In 1989, he was convicted of possession of a controlled substance (methamphetamine) and sentenced to prison for one to fifteen years.
 
 
 18
 Based on these two convictions, the district court sentenced Schickling as a "career offender" under U.S.S.G. § 4B1.1. The defendant concedes that he was at least eighteen years old and that violation of 21 U.S.C. § 841(a)(1) is a controlled substance felony. On appeal, Schickling contends that the 1984 conviction can not serve as a prior conviction because the offense was "small-time." We fail to see, however, how the 1984 conviction is not a controlled substance felony for purposes of career offender status. Section 4B1.1 does not provide an exception for purportedly "small-time" prior convictions that otherwise satisfy the express criteria, and we decline to read such an exception into it. Should a court determine that a particular defendant's criminal past is undeserving of "career offender" status, it has discretion to depart from the guidelines under 18 U.S.C. 3553(b). United States v. Bowser, 941 F.2d 1019, 1023 (10th Cir.1991). The district judge, who clearly understood his ability to depart, elected not to do so in this instance. To the extent that Schickling challenges the district court's decision not to depart, we lack jurisdiction over that discretionary determination. McHenry, 968 F.2d at 1048.
 
 
 19
 Finally, Schickling challenges his sentence as disproportionate to those received by other persons involved in the criminal activity, his wife's sentence included. Congress passed the sentencing guidelines, however, to eliminate sentencing discrepancies. Given that Schickling's sentence is appropriate under Congress's guidelines, his grievance is not with the courts but with the Congress that determined that career offenders who organize and preside over criminal activity deserve longer sentences than their first-offense followers.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Robin J. Cauthron, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3