UNITED STATES of America,
Plaintiff–Appellee,

v.

Ibrahim BAEZ–ACUNA, Defendant–
Appellant.

No. 94–6033.

United States Court of Appeals,
Tenth Circuit.

April 26, 1995.

June E. Tyhurst, Asst. Federal Public De-
fender, Oklahoma City, OK, for defen-
dant/appellant.

M. Jay Farber, Asst. U.S. Atty., Oklahoma
City, OK, for plaintiff/appellee.

Before SEYMOUR, Chief Judge, MOORE,
and HENRY, Circuit Judges.

SEYMOUR, Chief Judge.

On August 17, 1993, a federal grand jury
indicted Ibrahim Baez–Acuna for drug and

drug-related violations. Mr. Baez–Acuna subsequently filed a motion to suppress statements allegedly taken in violation of his Sixth Amendment rights, which the district court denied. Mr. Baez–Acuna then entered a conditional plea of guilty to a superseding indictment which alleged multiple violations of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 1952(a)(3). During sentencing, the court enhanced Mr. Baez–Acuna's base offense level by two points for his role in the offense pursuant to U.S.S.G. § 3B1.1(c). Mr. Baez–Acuna appeals, alleging Sixth Amendment and Sentencing Guideline violations. We affirm.

## I.

In early 1992, Agent Matt Lotspeich, of the FBI's organized crime and drug squad, began investigating Mr. Baez–Acuna for participation in the cocaine conspiracy which is the subject of this federal prosecution. Officer Mark Wood, of the Oklahoma City Police Department, assisted Agent Lotspeich with his investigation. Unbeknownst to Agent Lotspeich or Officer Wood, an undercover Drug Enforcement Agency (DEA) agent, Frank Moreno, made a controlled buy from Mr. Baez–Acuna in September 1992. On February 27, 1993, the state filed charges against Mr. Baez–Acuna for this drug transaction, at which time a warrant was issued for his arrest. The authorities did not arrest Mr. Baez–Acuna, however, until April 4.

Through a series of informants, including Mr. Baez–Acuna's common-law wife, Debra Guerrero, Officer Wood and Agent Lotspeich learned of Mr. Baez–Acuna's arrest and incarceration, and they arranged to speak with him on April 6. Officer Wood, Ms. Guerrero, and other informants began their meeting before Agent Lotspeich arrived. Officer Wood read the Miranda warnings in English, and Mr. Baez–Acuna, who appeared to understand the content of the warnings, signed a waiver of his right to counsel. Before beginning the interview, Officer Wood asked Mr. Baez–Acuna whether he was represented by an attorney. Mr. Baez–Acuna responded that although he retained an attorney for an ongoing state prosecution, he had no attorney in the instant case. Sup.Hrg.Tr. at 65.

Officer Wood then interviewed Mr. Baez–Acuna about his cocaine sources and the identities of his cohorts.

Agent Lotspeich arrived approximately one hour after the interview began. Soon thereafter, a bilingual FBI agent arrived and read the Miranda warnings in Spanish, and Mr. Baez–Acuna executed another waiver. Mr. Baez–Acuna also told Agent Lotspeich that he did not have an attorney. Id. at 36. Before questioning Mr. Baez–Acuna, Agent Lotspeich emphasized that the interview would not concern the state charges for which he was in jail, but rather federal charges that would likely be filed at some later date. Id. at 17. Mr. Baez–Acuna made incriminating statements during this interview.

The authorities released Mr. Baez–Acuna following these interviews. Soon thereafter, DEA Agent Moreno contacted him and scheduled a formal interview on April 8. Before commencing the interview, Agent Moreno asked if Mr. Baez–Acuna was represented by an attorney, and he responded that he was not. Id. at 76. Agent Moreno then questioned him, ultimately arranging for Mr. Baez–Acuna to become a DEA informant.

In January 1993, before the state filed charges for the 1992 controlled buy, the Oklahoma City police stopped Mr. Baez–Acuna for a routine traffic violation. During the course of the stop, the officers discovered cocaine. They arrested Mr. Baez–Acuna, and the Oklahoma City District Attorney's office filed charges in state court. Mr. Baez–Acuna retained an attorney, Don Easter, to represent him in this matter. He waived a preliminary hearing which was originally scheduled for mid-February 1993. Mr. Easter remains Mr. Baez–Acuna's lawyer for the 1993 traffic stop charges.

Mr. Baez–Acuna did not retain an attorney for the 1992 controlled buy charge until approximately April 20, 1993, almost two weeks after the April 6 and 8 interviews. At that time, he retained Mr. Easter, who was already representing him for the 1993 traffic stop. Mr. Easter testified at the suppression hearing that he had no knowledge of the 1992 controlled buy charges or the resulting April

1993 arrest at the time of the April 6 and 8 interviews. Sup.Hrg.Tr. at 107. Mr. Baez–Acuna also testified that he did not contact Mr. Easter regarding the interviews until several weeks later. *Id.* at 147–48.

In August 1993, a grand jury in the Western District of Oklahoma indicted Mr. Baez–Acuna for multiple drug and drug related violations. He filed a motion to suppress the statements made during the April 6 and 8 interviews on the grounds that he had been denied his Sixth Amendment right to counsel. Relying on *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the district court found that Mr. Baez–Acuna had invoked his Sixth Amendment right to counsel, which is offense-specific, only as to the 1993 traffic stop charge. *United States v. Baez–Acuna,* No. CR–93–171–C, slip op. at 4 (W.D.Okla. Oct. 29, 1993). The court further found that the 1993 traffic stop was unrelated to the 1992 controlled buy or the ongoing FBI investigation. *Id.* The court concluded that Mr. Baez–Acuna's right-to-counsel waivers were valid and that the April 6 interview, which focused exclusively on the ongoing FBI investigation, did not violate the Sixth Amendment. It therefore denied the motion to suppress.[1] The district court also addressed sua sponte a Fifth Amendment argument that Mr. Baez–Acuna, because of his limited understanding of the English language, did not adequately understand the implications of the waivers. The court found, however, that Mr. Baez–Acuna's testimony regarding his limited understanding of the English language was not credible, concluding that his Fifth Amendment rights were therefore not violated. Mr. Baez–Acuna does not appeal the district court's holding as it relates to the Fifth Amendment.

Mr. Baez–Acuna subsequently entered a conditional plea of guilty to one count of the superseding indictment, conspiracy to possess cocaine with intent to distribute. At the sentencing hearing, several witnesses described the roles that members of the drug conspiracy played. Following the testimony, the court held that Mr. Baez–Acuna was a manager of a criminal activity subjecting his base offense level to a two-point enhancement pursuant to U.S.S.G. § 3B1.1(c) and sentenced Mr. Baez–Acuna to 151 months imprisonment, 5 years supervised release, and a $50.00 special assessment.

Mr. Baez–Acuna appeals, arguing that the district court erred in denying the motion to suppress statements made in violation of his Sixth Amendment rights and by enhancing his base offense level pursuant to U.S.S.G. § 3B1.1(c).

## II.

While the target of a federal investigation, Mr. Baez–Acuna was arrested on at least two separate occasions. The first, in January 1993, resulted from a traffic stop during which the authorities discovered cocaine. The second, on April 4, 1993, stemmed from Mr. Baez–Acuna's participation in a controlled drug buy in September 1992. Both arrests resulted in the filing of state charges. Although Mr. Baez–Acuna had retained Mr. Easter for matters relating to the 1993 traffic stop, he explicitly waived his right to counsel on April 6, answering Officer Wood's and Agent Lotspeich's questions regarding the federal investigation. He also told Agent Moreno on April 8 that he was not represented by counsel, and then answered questions.

■ Mr. Baez–Acuna contends that the government violated his Sixth Amendment rights by interviewing him April 6 and 8 outside the presence of counsel when counsel had already been retained for the 1993 traffic stop charge. Similarly, Mr. Baez–Acuna argues that although he waived his right to counsel, the district court should have invalidated these waivers because his Sixth Amendment rights in the instant case had attached and had been invoked. When reviewing a denial of a motion to suppress statements, we review legal conclusions de novo and factual findings under a clearly erroneous standard. *See United States v. McAlpine,* 919 F.2d 1461, 1463 (10th Cir. 1990).

---

1. The district court did not explicitly address the April 8 interview. Because Mr. Baez–Acuna moved to suppress statements from his April 8 interview with Mr. Moreno, as well as from the April 6 interview with Mr. Lotspeich and Mr. Wood, we consider both interviews on appeal.

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel attaches " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). Once Sixth Amendment rights attach *and* the defendant properly invokes these rights by retaining or requesting counsel, subsequent waivers are deemed ineffective. *Michigan v. Jackson,* 475 U.S. 625, 635–36, 106 S.Ct. 1404, 1410–11, 89 L.Ed.2d 631 (1986). The Supreme Court recently circumscribed this framework by holding that Sixth Amendment rights are offense-specific. *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). In other words, the Sixth Amendment "cannot be invoked once for all future prosecutions," and the *Michigan v. Jackson* effect of invalidating subsequent waivers only applies if the waiver pertains to the charge for which the defendant initially invoked the Sixth Amendment. *Id.*

Mr. Baez–Acuna's Sixth Amendment right to counsel had attached with respect to the 1993 traffic stop charges and he had invoked the right by retaining Mr. Easter. Although the district court found that Mr. Baez–Acuna's Sixth Amendment rights had attached in the federal case upon institution of state proceedings for the 1992 controlled buy because both proceedings arose out of the same set of circumstances, the court concluded that neither of these proceedings were related to the 1993 traffic stop. Because the district court found that Mr. Baez–Acuna had not *invoked* his right to counsel with respect to the controlled buy charges, the court held that the April 6 and 8 right-to-counsel waivers were valid under *Michigan v. Jackson.* On appeal, Mr. Baez–Acuna disputes these conclusions.

■ We agree with the district court that Mr. Baez–Acuna's Sixth Amendment rights

did not attach in this case by virtue of the institution of proceedings on the 1993 traffic stop. It is clear from the testimony at the suppression hearing that the federal charges were completely divorced from the 1993 traffic stop charge. Mr. Easter, Mr. Baez–Acuna's lawyer for the traffic stop charges, testified that the stop was not pretextual, but rather a "pure traffic stop," implicitly recognizing that the stop was not a calculated move in the ongoing drug conspiracy investigation. Sup.Hrg.Tr. at 103. The April 6 and 8 interviews, crucial precursors to the filing of this case, did not concern the 1993 traffic stop. Officer Wood was not even aware of the traffic stop charges when he conducted his interview. *Id.* at 70. When asked whether the traffic stop had "anything whatsoever to do with your case," Agent Lotspeich responded, "Absolutely not." *Id.* at 14. Furthermore, Agent Lotspeich informed Mr. Baez–Acuna that the interview would not concern pending state charges but rather the ongoing FBI investigation. *Id.* at 17. Agent Moreno testified that he and Mr. Baez–Acuna did not discuss the 1993 traffic stop during their April 8 interview. *Id.* at 79. Mr. Baez–Acuna presented no evidence during the suppression hearing to contradict this testimony. The district court's finding that the 1993 traffic stop was a distinct, unrelated offense which could not have been the source of Sixth Amendment rights attaching in this case is not clearly erroneous.

■ We also agree with the district court that at the time of the April 1993 interviews Mr. Baez–Acuna had not invoked his Sixth Amendment rights with respect to the 1992 controlled buy charges and the federal investigation. Some time in February 1993, Mr. Baez–Acuna retained Mr. Easter to represent him in the proceedings arising from the January 1993 traffic stop, thus invoking his Sixth Amendment rights as to that offense. Mr. Baez–Acuna did not invoke his Sixth Amendment rights regarding the 1992 controlled buy, the reason for his April arrest and detention, until well after the April 6 and 8 interviews. Agent Lotspeich, Officer Wood, and Agent Moreno testified that, prior to commencing the interview, they asked Mr. Baez–Acuna whether he was represented by

counsel. He answered negatively to all three. Mr. Easter testified that, on the dates in question, he had no knowledge of the 1992 controlled buy charges or the ensuing arrest. Mr. Easter further testified that he did not have a "permanent retainer" relationship with Mr. Baez–Acuna, that Mr. Baez–Acuna paid him or made some other arrangements for remuneration in each individual case, and that he was not retained until some time around April 20 for the 1992 controlled buy. *Id.* at 102, 105. Mr. Baez–Acuna corroborated this testimony. Thus, Mr. Baez–Acuna did not invoke his right to counsel as to the 1992 controlled buy charges until approximately April 20 when he retained Mr. Easter to represent him. We agree with the district court that his waiver of that right during the April 6 and 8 interviews was therefore valid under *Michigan v. Jackson.*

In sum, at the time of the April interviews, Mr. Baez–Acuna had invoked his Sixth Amendment right to counsel only for the 1993 traffic stop charges, but the waivers he executed and the statements he attempts to suppress were unrelated to that charge. *McNeil v. Wisconsin* instructs that Sixth Amendment rights are offense-specific and that waivers are invalid only if they relate back to the specific offense for which the defendant has invoked his right to counsel. We therefore hold that the government did not violate Mr. Baez–Acuna's Sixth Amendment rights on April 6 and 8 by interviewing him outside the presence of counsel. We affirm the district court's denial of the motion to suppress statements.

### III.

■ Mr. Baez–Acuna also challenges the district court's enhancement of his base offense by two levels for his role in the criminal activity. When reviewing sentencing decisions pursuant to U.S.S.G. § 3B1.1(c), we review legal conclusions under a de novo standard, *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir.), *cert. denied*, 498 U.S. 870, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990),

and factual allegations under a clearly erroneous standard. *United States v. Mays*, 902 F.2d 1501, 1503 (10th Cir.1990).

The testimony at the sentencing hearing revealed the following. Ms. Guerrero, at Mr. Baez–Acuna's direction, accompanied him on several drug-buy trips to Fort Worth; repeatedly delivered cocaine and collected money from two customers, Cory Beckman and Diane Clarkson; and frequently weighed cocaine for her husband. Jennifer Gomez, an ex-girlfriend of Mr. Baez–Acuna, accompanied him on two trips to Fort Worth and often carried cocaine for Mr. Baez–Acuna during delivery runs. Ms. Gomez testified that she feared Mr. Baez–Acuna and therefore would never disobey his orders. Sent. Hrg.Tr. at 70. Ms. Gomez also testified that a bartender, Mr. Chileo, would serve as a conduit for Mr. Baez–Acuna's drug business, delivering cocaine to customers and returning purchase money to Mr. Baez–Acuna. David Alvarez, who moved into Mr. Baez–Acuna's apartment while Ms. Gomez was living there, played an instrumental role in the conspiracy. At Mr. Baez–Acuna's direction, Mr. Alvarez would break-down, package, and sell the cocaine. Following this testimony, the district court found, "[A]t some time or another, during the acts alleged and the acts which serve as acts of conviction, Mr. Baez–Acuna directed and managed at least the following people: Alvarez, Guerrero, Gomez, Chileo, Clarkson and . . . Beckman." Sent. Hrg.Tr. at 130.

■ The Sentencing Guidelines provide that a defendant who is an "organizer, leader, manager, or supervisor in any criminal activity other than that described in (a) or (b)" shall have his offense level raised by two levels.[2] U.S.S.G. § 3B1.1(c). In determining whether the defendant's sentence should be raised, the court should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense . . . and

---

**2.** Subsection (a) of U.S.S.G. § 3B1.1 provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Subsection (b) of U.S.S.G. § 3B1.1 provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."

the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 n. 3. We have held that section 3B1.1(c) is satisfied upon a mere showing "that the defendant exercised any degree of direction or control over someone subordinate to him in the distribution scheme." *Backas,* 901 F.2d at 1530. However, the sale of drugs to a customer does not in and of itself prove that the defendant had an aggravating role in criminal activity. *United States v. Moore,* 919 F.2d 1471, 1477 (10th Cir.1990), *modified on other grounds,* 958 F.2d 310 (1992).

 The government concedes that Ms. Clarkson and Mr. Beckman were only customers of Mr. Baez–Acuna and that the district court erroneously factored their involvement into the enhancement calculus. Aplee. Br. at 15. Nonetheless, the evidence at the sentencing hearing unequivocally revealed that Mr. Baez–Acuna controlled and directed the activities of at least four others: Ms. Guerrero, Ms. Gomez, Mr. Chileo, and Mr. Alvarez. In following Mr. Baez–Acuna's orders, these individuals provided vital assistance in the procurement, distribution, and sale of cocaine. Given the involvement of these four participants, we conclude that the district court's enhancement of the base offense by two levels pursuant to section 3B1.1(c) was not clearly erroneous.

For the reasons set forth herein, we AFFIRM the judgment of conviction and the sentence the district court imposed.