**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

VICTOR SHANE KIISTER,

    Defendant - Appellant.

No. 99-3041

(D. Kansas)

(D.C. No. CR-97-40061-01)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Victor Shane Kiister pleaded guilty to possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g), and was sentenced to seventy-

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

eight months in prison. [1] He appeals his sentence, arguing that the district court erred by (1) making a two-level upward adjustment in his base offense level under United States Sentencing Guidelines § 2K2.1(b)(4) for possession of a stolen firearm, arguing there was inadequate evidence that the firearm he possessed was stolen, and (2) enhancing his base offense level two levels under U.S.S.G. § 3B1.1(c) for being an organizer or supervisor of the criminal enterprise. We affirm.

## BACKGROUND

On January 9, 1998, Victor Kiister pleaded guilty to one count of a federal grand jury indictment alleging that in February 1997, after having been previously convicted of a felony, he knowingly possessed thirty firearms in violation of 18 U.S.C. § 922(g). The present appeal arises out of the sentence imposed for this conviction.

The same firearms listed in this federal indictment were the source of an earlier state felony conviction for Kiister. In December 1995, county sheriff's deputies seized twenty-seven firearms during a search of the home Kiister shared

---

[1]This sentence was ordered to run concurrently with Kiister's sentence imposed in a separate district court conviction, United States v. Kiister, No. CR97-40036-02 (D. Kan. Jan. 26, 1999). By separate Order and Judgment issued today, we also affirm Kiister's conviction in that matter.

with his girlfriend, Jennifer Lynn Stevens. On February 7, 1996, Kiister was convicted in Labette County District Court on charges of criminal possession of a firearm. Following Kiister's conviction, Stevens represented to the authorities that she had purchased all of Kiister's firearms for $1.00. Based on that representation, the Labette County Sheriff's Office returned all of the seized firearms to Stevens. Stevens later admitted that she obtained these firearms so that Kiister would have continued access to them.

In February 1997, county investigators learned that a man named Dale Madl was holding firearms for Kiister. Because Madl lived outside the jurisdiction, the county sheriff's department requested assistance from the Bureau of Alcohol, Tobacco, and Firearms (ATF). Together, the officers contacted Madl, who informed them that Kiister had brought Madl the firearms soon after Kiister's 1996 conviction and asked Madl to keep the firearms at his home. Madl stated that Kiister told him that Ms. Stevens had obtained these firearms from the sheriff's office by telling them that the firearms belonged to her, and that Kiister had then brought them to Madl. Madl also told the police that Kiister periodically returned to Madl's home to retrieve and use the firearms. With Madl's consent, the officers seized the thirty firearms Madl identified as being the firearms Kiister had brought to him. An ATF serial number check revealed that twenty-five of

these firearms were among those returned to Stevens by the sheriff's office the previous year.

Madl also told the officers that in September 1996, Kiister and his now-wife Jennifer Lynn Stevens-Kiister had attended a Ducks Unlimited banquet, where Kiister won one shotgun and purchased another. Several days after the banquet, Stevens-Kiister went to the local firearms dealer that was holding the firearms won or purchased at the banquet. Stevens-Kiister filled out the required ATF forms and took possession of two 12-gauge shotguns that had been sold or raffled at the banquet. Witnesses present at the banquet confirmed that they had observed Kiister, not Stevens-Kiister, bidding on the Browning shotgun at the banquet auction. Madl told police that Kiister had taken possession of the two shotguns and later asked him to keep them at his home with Kiister's other guns.

As stated above, on September 10, 1997, Kiister and Stevens-Kiister were indicted on a five-count indictment charging Kiister with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 2, 922(g), 924(a)(2), and charging Stevens-Kiister with various offenses for her role in obtaining and delivering the firearms to Kiister. Kiister pleaded guilty to Count 1 of the indictment for his constructive possession of the thirty firearms seized from Madl's home. Prior to the preparation of the presentence report, the government submitted a copy of the ATF property inventory report that concluded that one of

the firearms obtained from Madl's residence, a Ruger .22 caliber pistol, was

stolen. The ATF report was based on National Crime Information Center (NCIC)

data indicating that the firearm bearing that serial number was stolen.

Accordingly, the presentence report recommended that the district court enhance

Kiister's base offense two levels under U.S.S.G. § 2K2.1(b)(4), and further

recommended a two-level enhancement under U.S.S.G. § 3B1.1 for Kiister's role

as an organizer or leader in the criminal activity. Kiister objected to both

recommendations, asserting that there was insufficient evidence that any of the

firearms he possessed were stolen, and that he had not acted in any leadership

role. After reviewing the ATF report and hearing argument from both sides, the

district court overruled Kiister's objections and enhanced his base offense level

two levels under section 2K2.1(b)(4) and two additional levels under section

3B1.1(c).


## I.

Kiister first contends that the government did not adequately prove that one

of the firearms he possessed was stolen. We review the district court's factual

findings for clear error. See United States v. Windle, 74 F.3d 997, 1000 (10th

Cir. 1996).

At sentencing, the district court may rely on facts in the presentence report unless the defendant objected to them. See United States v. Shinault, 147 F.3d 1266, 1277 (10th Cir. 1998). However, upon a proper objection by the defendant, the government must prove the disputed fact by a preponderance of the evidence, see id. at 1278, and the presentence report itself is insufficient to prove facts contained therein, see United States v. Farnsworth, 92 F.3d 1001, 1011 (10th Cir. 1996). Evidence presented at a sentencing hearing need not be admissible under the Federal Rules of Evidence; instead, it "merely needs to be supported by 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Windle, 74 F.3d 997, 1000 (10th Cir. 1996) (quoting United States v. Tovar, 27 F.3d 497, 499 (10th Cir. 1994)). Similarly, hearsay statements may be used at sentencing as long as they possess some "minimum indicia of reliability." United States v. Browning, 61 F.3d 752, 755 (10th Cir. 1995).

Kiister objected to the presentence report's assertion that one of the firearms he possessed was stolen. Consequently, the government bore the burden of proving this fact by a preponderance of the evidence. In finding that Kiister possessed a stolen firearm, the district court judge did not rely alone upon the presentence report's assertion, but personally reviewed a copy of the ATF report that indicated that the Ruger .22 caliber pistol in question had been stolen. As mentioned above, that report was based on NCIC data that the Ruger pistol

bearing the same serial number was stolen. At sentencing, while Kiister objected generally to the sufficiency of the ATF report, he offered no tenable reason why it or the NCIC data might be unreliable; his arguments on appeal are merely hypothetical. [2]

The district court found that the report possessed sufficient indicia of reliability to indicate its probable accuracy. Nothing in the record suggests otherwise. Accordingly, we hold that it was not clear error for the district court to find that the ATF report established by a preponderance of the evidence that Kiister had possessed a stolen firearm and to thus enhance his base offense by two

---

[2]Kiister suggests several reasons why the ATF report might not be accurate, including the possibilities that (1) digits in the serial number in the report might have been transposed, (2) firearms listed as "stolen" might include those that are misplaced or lost, and (3) the report might be outdated. Such hypothetical situations are unlikely, and as the district court stated, provide no "tenable reason to question the reliability of the NCIC as an investigative tool or to doubt the accuracy and reliability of the information recorded on the ATF report." Findings on Objections to Presentence Report at 7 (Jan. 8, 1999).

Of course, the mere fact that the government presents an official report does not mean that all the government's contentions relating to that report are true. See United States v. Cataldo, 171 F.3d 1316, 1321 (11th Cir. 1999) (holding that a computer printout indicating that the defendant had been arraigned and convicted was insufficient evidence that the defendant had also been arrested on that charge, as the inference, while reasonable, required too much speculation). In the present case, we need neither speculate nor draw any inferences. The ATF and NCIC reports state the precise fact the government must prove: that the Ruger .22 caliber pistol Kiister possessed was stolen.

levels. [3]  Cf. Browning , 61 F.3d at 755 (finding hearsay evidence sufficiently reliable in absence of reasons suggesting otherwise).

**II.**

Kiister next contends that the district court erred in finding under U.S.S.G. § 3B1.1(c) that he was an organizer or supervisor of a criminal activity.  Kiister contends that in obtaining the assistance of Stevens-Kiister and Madl, he was not attempting to evade the law, but rather to comply with it by keeping his firearms titled in the name of another and out of his immediate possession.  Because Stevens-Kiister and Madl were simply acting in a failed attempt to help Kiister

---

[3]We are unpersuaded by Kiister's contention that because the government did not formally present the ATF or NCIC reports as exhibits at the sentencing hearing, he was denied the opportunity to effectively confront the evidence. Section 6A1.3(a) of the Sentencing Guidelines requires that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information" regarding that factor.  U.S.S.G. § 6A1.3(a).  The record shows that prior to the sentencing hearing both parties were furnished with copies of the court's proposed findings, which discussed the ATF report and the supporting NCIC data.  See Sentencing Tr., R. Vol. III at 2, 11, 13-14.  At the sentencing hearing, both parties were given full opportunity to make arguments.  Kiister's attorney first addressed the court's proposed findings, arguing generally that an inventory report "seems like insufficient grounds in which to hold that a firearm is stolen," id. at 12, but making no tenable attacks on the report's accuracy or reliability.  Counsel for the government responded that the court's proposed findings accurately reflected that the NCIC data on the firearm indicated that it was stolen.  See id. at 13-14. Under these circumstances, introduction of the report as an exhibit was unnecessary.

comply with the law, Kiister argues, their participation was not criminal, and accordingly he cannot have organized or supervised a "criminal activity." When reviewing sentencing decisions under U.S.S.G. § 3B1.1(c), we review legal conclusions under a de novo standard, and factual allegations under a clearly erroneous standard. See United States v. Baez-Acuna , 54 F.3d 634, 638 (10th Cir. 1995).

Section 3B1.1(c) instructs courts to increase by two levels the defendant's base offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). We have held that "to be a supervisor, one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity for which the sentence is given," United States v. Backas , 901 F.2d 1528, 1530 (10th Cir. 1990), and that any degree of direction will satisfy the definition of "supervision," see United States v. Moore , 919 F.2d 1471, 1477 (10th Cir. 1990). At sentencing, "[b]efore imposing an enhancement based on a defendant's role in the offense, the sentencing court must make specific factual findings as to that role." United States v. Wacker , 72 F.3d 1453, 1476 (10th Cir. 1995).

The district court found by a preponderance of the evidence that Kiister had supervised and organized a scheme that allowed "him to maintain and to avoid detection of his unlawful possession and control of the firearms."  Findings on Objections to Presentence Report at 7 (Jan. 8, 1999).  Additionally, the court expressly found

> that Kiister told his friend, Dale Madl, that he had been convicted of felony possession of firearms but that his girlfriend and later his wife, Jennifer Stevens-Kiister, had obtained the seized firearms from the Labette County Sheriff's Department by claiming they belonged to her.  When she returned with the firearms, Kiister took control of them and delivered the firearms to Madl's residence for storage.  The [police] report also recounts Madl's statement concerning Kiister's purchase of a shotgun through his wife and Kiister's request of Madl to store this shotgun at Madl's home.  Madl further told officers that Kiister came by Madl's residence on several occasions to get shotguns and rifles for hunting.
> . . . Both his wife and his friend knew that Kiister was a convicted felon.

Id. at 7-8.

Based on the record, the district court did not err in its findings that Madl and Stevens-Kiister knew that Kiister was a convicted felon and that Madl periodically allowed Kiister to use the firearms stored in his home.  For her role in the scheme, Stevens-Kiister was indicted on charges of knowingly disposing of firearms to a felon.  Because Madl and Stevens-Kiister assisted Kiister in possessing firearms, knowing he could not legally do so, both could have been charged with aiding and abetting Kiister's firearm possession.    See 18 U.S.C.

§§ 2, 922(g).  Such conduct is plainly "criminal activity."  Kiister's contention that Madl and Stevens-Kiister acted innocently is belied by the record and by the district court's factual findings to the contrary.  The district court's findings, supported by the record, are sufficient to support the section 3B1.1(c) enhancement.


## CONCLUSION

For the aforementioned reasons, we     **AFFIRM**  the judgment of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge