UNITED STATES of America, Appellee,

v.

Monte Allen APFEL, Appellant.

No. 90–2637.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1991.
Decided Aug. 30, 1991.

John Ackerman, Waterloo, Iowa, for appellant.

Janet Peterson, Asst. U.S. Atty., argued (Daniel Tvedt, Asst. U.S. Atty, on the brief), Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and DOTY,* District Judge.

HEANEY, Senior Circuit Judge.

Monte Allen Apfel pleaded guilty to conspiring to distribute and conspiring to possess with intent to distribute methamphetamine. He appeals his 175–month guidelines sentence. Apfel claims that the district court erred by finding that (1) he was responsible for distributing or possessing with intent to distribute one pound of methamphetamine, and (2) he was an organizer or leader of a criminal activity that involved five or more participants. We affirm the district court,[1] which conducted an extensive evidentiary hearing and made careful findings of fact well supported by the record.

## Background

■ Apfel pleaded guilty to an information charging him with a single count of conspiring to distribute and conspiring to possess with intent to distribute methamphetamine from 1984 to February 1989. At the plea hearing, the government outlined the proof it would have presented had there been a trial on the conspiracy charge.[2] Apfel disputed some of the government's allegations, but admitted that from 1984 to February 1989, he bought methamphetamine from two suppliers and made at least ten sales to friends, sometimes more than once to the same person. According to Apfel, his two suppliers knew that he was selling the drugs to others. Apfel also admitted that he used methamphetamine and stated that he sold the drug to pay for his habit.

The district court held an extensive evidentiary hearing to determine, among other things, the amount of drugs attributable to Apfel. The hearing spanned two days and involved ten witnesses. Some of the witnesses who said they had bought drugs from Apfel described the guns and the quantities of drugs in Apfel's possession. Other witnesses, such as other dealers, testified about Apfel's role in the drug conspiracy. After considering this testimony, the district court found that Apfel was responsible for one pound of methamphetamine, possessed a gun during the commission of the offense, and was a manager or supervisor of the criminal activity. The court sentenced Apfel to 175 months in prison.[3]

## Amount of Drugs Attributable to Apfel

■ Apfel raises two issues on appeal. First, he claims that the district court erred by calculating his offense level based on the conclusion that Apfel bought a pound of methamphetamine from bigger drug

---

* The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

2. The government should give notice to the defendant by setting forth during the plea proceedings the sentencing enhancements that it intends to seek, such as the amount of drugs involved and the use of a gun. *See United States v. Rivers,* 917 F.2d 369, 374 (8th Cir.1990). This issue, however, is not presented in this appeal as a ground for reversal. Moreover, the prosecutor did present in commendable detail what each of his witnesses would have testified to concerning Apfel's drug purchases and sales. While the prosecutor did not specifically state the total amount of drugs for which he would seek to hold Apfel responsible, the government's proposed testimony did detail the amounts of drugs bought and sold by Apfel, which added up to at least one pound of purchases and eleven ounces of sales. Similarly, although the prosecutor did not specifically state that he would seek a two-point enhancement because Apfel possessed a gun while committing the drug offense, he represented that one of his witnesses would have testified at trial that Apfel used a gun to collect a drug debt from him. Apfel thus pleaded guilty with knowledge of the government's proof and the relevant sentencing facts against him.

3. The district court used the drug equivalency tables in effect before November 1, 1989, which led to a base offense level of 26 for one pound of methamphetamine. The district court added two points to Apfel's offense level pursuant to U.S.S.G. § 2D1.1(b)(1) (dangerous weapon), added three points for Apfel's role in the offense as a manager or supervisor, and granted two points credit for Apfel's acceptance of responsibility. With a final offense level of 29 and a criminal history category of VI, Apfel's guidelines range was 151–188 months.

dealers. Apfel does not contest here that the district court could have found from the evidence that he bought a total of one pound of methamphetamine. Apfel contends, however, that the purchases were for his own use rather than for resale.

The district court did not clearly err in finding that Apfel bought one pound of methamphetamine from his suppliers for resale. Witnesses testified that Apfel bought methamphetamine in at least one-ounce quantities, that those quantities were too big for personal use, that Apfel packaged the drugs in smaller quantities for resale, and that Apfel frequently sold the drugs to others. The district court was not required to believe Apfel's claim that he bought drugs mostly for personal use. Indeed, the district court expressly discredited Apfel's testimony, having found Apfel's answers evasive and vague.

■ Apfel also claims that the district court's finding as to drug quantities should be set aside because he was denied the right to confront the witnesses testifying against him. *See United States v. Fortier*, 911 F.2d 100, 103–04 (8th Cir.1990) (confrontation clause violated where district court based drug quantities on multiple hearsay contained in a presentence report, yet made no finding as to the trustworthiness of the hearsay statements). *But see United States v. Wise*, 923 F.2d 86 (8th Cir.) (applying *Fortier*) (concurring and dissenting opinions express disagreement with *Fortier*), *vacated and reh'g en banc granted*, (8th Cir. March 15, 1991). As Apfel points out, the presentence report and the sentencing hearing contained many hearsay statements, and he never had the chance to cross-examine many of the declarants. Assuming that Apfel preserved

this issue,[4] however, we find it without merit.

To determine drug quantity, the district court relied primarily on the testimony of Linda Viers, a go-between and bookkeeper for Charles Murphy, one of Apfel's main suppliers. Viers testified that, as Murphy's bookkeeper, she kept track of the drug transactions between Murphy and Apfel for several months in 1988. Viers testified that, based on her experience as Murphy's bookkeeper during this time, Apfel bought from Murphy ounce-size quantities of methamphetamine totaling at a "very minimum" one pound. Viers' statements were not hearsay and Apfel was able to cross-examine Viers about them. In addition, the court relied on nonhearsay statements from other witnesses who had either bought methamphetamine from Apfel or had observed him with large amounts of the drug. Finally, the district court noted that a statement by Murphy in the presentence report corroborated Viers' testimony. While that statement was hearsay, Apfel did not dispute it. Apfel did not ask the court to call Murphy as a witness. The district court was thus entitled to rely upon the undisputed statement to corroborate Viers' testimony. In sum, the district court did not violate Apfel's right to confrontation in determining the relevant drug amount.[5]

### Manager or Supervisor

■ Apfel claims that the district court erred by finding that he was a manager or supervisor in a criminal activity involving five or more participants. We disagree.

The district court did not simply make rote findings by parroting the language in U.S.S.G. § 3B1.1(b).[6] He named three of the participants and noted that Apfel was a

---

**4.** Apfel objected only once to hearsay testimony during the sentencing hearing, and he never objected to testimony based on the confrontation clause. *Cf. United States v. Streeter*, 907 F.2d 781, 791–92 (8th Cir.1990) (confrontation clause issue not preserved in absence of "sufficiently specific objection" to presentence report).

**5.** Apfel also contends that the district court was not an impartial trier of fact because it had seen several of the government's witnesses testify in

previous proceedings. This point has no merit; Apfel is just disagreeing with the district court's credibility findings, which we have found not to be clearly erroneous.

**6.** U.S.S.G. § 3B1.1(b) provides:

If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

dealer of "some size and substance," had many customers coming to him for drugs, and supervised runners. The record supports these findings. Apfel admitted at his guilty plea that when he bought the drugs from his two suppliers, the suppliers knew he was going to resell the drugs. At the sentencing hearing, several of Apfel's customers testified they bought drugs from Apfel. Other evidence presented at the hearing indicated that the drug conspiracy included not only Apfel and his two suppliers, but five other people who ran drugs and collected money for Apfel. Direct testimony linked five of these seven conspirators to Apfel; only two were linked through hearsay testimony. Given this evidence, we do not find that the district court clearly erred when it determined that Apfel was a manager or supervisor under U.S.S.G. § 3B1.1(b).

### Conclusion

The district court conducted an exemplary evidentiary hearing after being called upon to determine disputed facts, such as the amount of drugs attributable to Apfel, Apfel's role in the offense, and whether Apfel possessed a gun while committing the offense. Rather than relying on the hearsay statements contained in the presentence report or elsewhere, the district court relied on the in-court testimony of witnesses who testified that they had personally observed Apfel's drug dealings.[7] This is as it should be. As the government noted at oral argument, however, the extensive hearings conducted by the district court make this an *unusual* case rather than the rule. This is unfortunate. Complete hearings with eyewitness testimony aid appellate review, and more importantly, ensure that the extensive fact finding required under the guidelines is accurate and fair.

We affirm the sentence imposed by the district court.

---

**7.** *Compare United States v. Johnson,* 925 F.2d 1115, 1117–18 (8th Cir.1991); *Wise,* 923 F.2d at 86–87, *vacated and reh'g en banc granted,* March 15, 1991; *Fortier,* 911 F.2d at 103.