UNITED STATES of America,
Plaintiff–Appellee,

v.

John EGGE, Defendant–Appellant.

No. 98–30322.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 2000.

Filed Sept. 15, 2000.

Deirdre Caughlan, Butte, MT, for defendant-appellant.

Kris A. McLean, Assistant U.S. Attorney, Missoula, MT, for plaintiff-appellee.

Before: REAVLEY,* CYNTHIA HOLCOMB HALL, and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This case requires us to consider whether drug users who purchase drugs from a seller convicted of conspiracy to distribute methamphetamine under 21 U.S.C. § 846 are necessarily participants in the criminal activity for the purposes of the U.S.S.G. § 3B1.1(b) enhancement for role in the offense. We hold that customers who are solely end users of controlled substances are not participants for the purposes of U.S.S.G. § 3B1.1(b). Because the record in this case provides sufficient evidence of five participants in Appellant's criminal activity exclusive of his customers, we nevertheless affirm the sentence imposed by the district court. We also affirm the judgment convicting Appellant. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

I.

Appellant is a thirty-nine year old male who resided in Missoula, Montana prior to his incarceration. In 1997, the Missoula County Sheriff's Department began investigating an individual named Gordon Eric Barraugh, who they suspected was involved in dealing controlled substances. An investigation of Barraugh pointed the police to Appellant, who was listed as a customer in one of Barraugh's drug ledgers. At trial, Barraugh testified that he fronted methamphetamine to Appellant and had once loaned him several hundred dollars.

The police obtained a warrant to search Appellant's home and vehicle. In his home they found one small plastic bag containing marijuana. A search of his ve-

* The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

hicle produced, inter alia, a small scale, a box of ziploc baggies, and LSD. The police also found Jennifer Featherman's name and address during the course of their search. At trial, Featherman testified that she obtained drugs from Appellant and that she accompanied him on a number of occasions when he was purchasing and distributing methamphetamine. She testified that, after purchases, the two of them would proceed to her home to weigh the methamphetamine purchased and place it in plastic bags for distribution. She also testified that another individual performed services for Appellant similar to those Featherman performed so that they "could take the fall" for Appellant if the police discovered the illegal activities.

Appellant was indicted by a grand jury on charges that he violated 21 U.S.C. § 846, conspiracy to distribute the controlled substance of methamphetamine (distribution itself is criminalized by 21 U.S.C. § 841(a)(1)). Featherman testified at trial that Appellant asked her to help him flee the state after his indictment. However, Appellant was arrested, arraigned, and released on his own recognizance. Appellant subsequently attempted to fake his own suicide as a means of evading trial. When the police were unable to locate Appellant's body, they issued a warrant for his arrest, and he was apprehended on May 15, 1998.

After a two-day trial, Appellant was convicted by a jury. The district court denied Appellant's motion for a judgment of acquittal notwithstanding the jury's verdict, or in the alternative for a new trial. Subsequently, during the preparation of the Presentence Investigation Report ("PSR"), Appellant's probation officer interviewed Featherman on the telephone. According to the PSR, Featherman stated that Appellant "had at least 3 suppliers and at least 10 regular customers." Based on that statement and the fact that Appellant

was convicted of conspiracy to distribute methamphetamine, the PSR recommended a three-level upward adjustment for role in the offense under U.S.S.G. § 3B1.1(b). The district court largely adopted the PSR's recommendation and ordered a three-level enhancement. The district court overruled the objections of Appellant's trial counsel that Featherman's unsworn statement about the number of customers and suppliers had "no indicia of reliability." Appellant was sentenced to 41 months imprisonment on October 28, 1998. Appellant then filed a notice of appeal.

## II.

■ This Court reviews the district court's factual finding that a defendant was a manager of a criminal activity involving five or more participants for clear error. *See United States v. Camper,* 66 F.3d 229, 231 (9th Cir.1995). This Court reviews the district court's Rule 29 determination that sufficient evidence supports the conviction de novo. *See United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994). "In deciding whether there was sufficient evidence to convict ... 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond any reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

## III.

Appellant contends that the district court erred by finding that he managed or supervised a criminal activity involving five or more participants, qualifying Appellant for a three-level enhancement under U.S.S.G. § 3B1.1(b).[1] Appellant claims that he was not a manager, that the district court improperly relied on an un-

---

1. Appellant does not argue that his sentence violates the Supreme Court's recent decision in *Apprendi v. New Jersey,* —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* does not apply to this case because, while

the maximum sentence that Appellant could have received was 20 years imprisonment, *see* 21 U.S.C. § 841, he was sentenced to only 41 months.

**1132**

sworn hearsay statement in making its finding, and that the district court improperly included Appellant's customers as participants in his criminal activity.

■ Appellant first argues that the evidence does not support a finding that he was a manager or supervisor. The Sentencing Guidelines provide for a three-level upward adjustment in offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Application note 2 of the Sentencing Guidelines commentary notes that to "qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.* at commentary application note 2. The enhancement may thus be appropriate as long as Appellant managed at least one participant. *See Camper,* 66 F.3d at 231.

■ There is sufficient evidence in the record for a reasonable trier of fact to conclude that Appellant did manage Jennifer Featherman. Featherman testified that she allowed Appellant to use her home as a place for weighing and packaging the methamphetamine he had purchased. Featherman accompanied Appellant on trips to pick up methamphetamine from his suppliers, saw him sell drugs, and worked for Appellant's lawn mowing business. Appellant also asked Featherman to assist him in fleeing the state after his indictment. The record also supports the inference that Appellant compensated Featherman for her services with free drugs. Featherman's testimony further indicates that Appellant used another individual in a similar manner to help him sell drugs. On this record, there is sufficient evidence for a reasonable trier of fact to conclude that Appellant managed Featherman and another individual. The district court did not clearly err.

Appellant next argues that the district court erred by basing its finding that the criminal activity involved five or more par-

ticipants on an unsworn hearsay statement. When the district court ordered the enhancement under U.S.S.G. § 3B1.1(b), the court largely adopted the Presentence Investigation Report's recommendation, including the number of Appellant's suppliers and customers listed in the PSR. The PSR's count was based on Jennifer Featherman's statement made during a telephone call with Appellant's probation officer that Appellant "had at least 3 suppliers and at least 10 regular customers." The district court overruled the objection of Appellant's trial counsel that Featherman's unsworn statement lacked sufficient indicia of reliability. The district court indicated that the testimony he heard at trial corroborated Featherman's hearsay statement that there were at least five participants in the conspiracy.

■ In making factual determinations, a sentencing judge is generally not restricted to evidence that would be admissible at trial. *See United States v. Hopper,* 27 F.3d 378, 382 (9th Cir.1994). However, "inadmissible evidence cannot be considered [at sentencing] if it lacks sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotation marks omitted); *see also United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.), *as amended by* 992 F.2d 1015 (9th Cir.1993) ("Although the Confrontation Clause does not apply at sentencing, a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information. Due process requires that some minimal indicia of reliability accompany a hearsay statement.") (citations omitted). This requirement demands extrinsic corroborating evidence that supports the hearsay statement. *See id.* at 1370.

■ In this case, the district court adopted the number of Appellant's customers and suppliers as stated in the PSR recommendation when it ordered the section 3B1.1(b) adjustment. However, the only evidence that Appellant had at least three suppliers and ten customers was

Featherman's unsworn hearsay statement. The trial testimony indicates that Appellant had at least one supplier and some customers, but because the critical question here is the precise number of participants in the criminal activity, the trial testimony constitutes insufficient corroboration of Featherman's statement of the precise number of participants. If the district court had relied solely on Featherman's statement in concluding that there were five participants, that would not have been a proper basis for the district court's conclusion.[2]

Appellant next argues that even if reliance on Featherman's testimony was a proper basis for the district court's conclusion, the court improperly included his methamphetamine customers in counting the number of participants in the criminal activity for the upward adjustment under U.S.S.G. § 3B1.1(b). The PSR listed Appellant's three suppliers and ten customers as a basis for its recommendation of an adjustment under section 3B1.1(b). The district court adopted that recommendation when it ordered the upward adjustment.

The district court's apparent inclusion of Appellant's customers as participants for the section 3B1.1(b) adjustment rests on the assumption that a drug dealer's customers automatically qualify as participants in his criminal activity under U.S.S.G. § 3B1.1(b). This assumption is too broad. Section 3B1.1 attempts to apportion relative responsibility where an offense involves multiple participants, and provides an upward adjustment where the defendant had an aggravating role. However, before criminal responsibility need be apportioned, there must be multiple individuals who bear some criminal responsibility for the commission of the offense. The Sentencing Guidelines recognize this in their definition of a "participant" for

purposes of section 3B1.1. Under application note 1 of the Sentencing Guidelines commentary, a "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 commentary application note 1.

When this definition is applied to customers of a seller convicted of conspiracy to distribute a controlled substance under 21 U.S.C. § 846, it becomes clear that merely purchasing drugs from the seller, without more, does not qualify that customer as a participant for the purposes of the section 3B1.1 enhancement. Where the customers are solely end users of controlled substances, they do not qualify as participants because their purchases do not constitute a commission of the offenses outlined in 21 U.S.C. § 841(a), absent an intent to distribute or dispense the substance. In order to qualify as a participant, a customer must do more than simply purchase small quantities of a drug for his personal use. The facts must support an inference that the seller knew or should have known that the customer would subsequently distribute the drugs to others outside his household. *See United States v. Apfel*, 945 F.2d 236, 239 (8th Cir.1991).

Consistent with this interpretation, the Courts of Appeals have not treated end users who purchase drugs from drug dealers as participants under section 3B1.1. *See, e.g., United States v. McMullen*, 86 F.3d 135, 138 (8th Cir.1996) (finding that the evidence rebutted the appellant's claim that the named participants in his criminal activity were merely drug users and strongly implying that "mere[ ] drug users" do not count as participants under section 3B1.1); *United States v. Baez–Acuna*, 54 F.3d 634, 639 (10th Cir.1995) ("However, the sale of drugs to a customer does not in and of itself prove that the

---

**2.** As we explain below, the district court also relied on "the testimony that [it] listened to at the time of trial," to support its conclusion that there were five or more participants. Having examined the record, we find that the trial testimony does support the district

court's conclusion that there were five or more participants in the criminal activity. Thus, although Featherman's hearsay statement was not corroborated, that statement was a superfluous basis for the district court's ultimate holding.

defendant had an aggravating role in criminal activity."). This interpretation is also consistent with our participant count in *United States v. Roberts,* 5 F.3d 365 (9th Cir.1993). In that case, we stated that "there were only three, not five participants." *Id.* at 371. The statement of facts in that case mentions two customers we did not treat as participants. *See id.* at 370. In sum, we hold that customers who are solely end users of controlled substances are not participants for the purposes of U.S.S.G. § 3B1.1(b).

 In the case at bar, Appellant sold methamphetamine in small quantities for between $25 and $100 per sale. This evidence strongly suggests that Appellant's customers were end users. Nothing in the record creates an inference to the contrary. Appellant's customers thus do not count as participants under the Guidelines. As a result, Featherman's statement that Appellant had three suppliers and ten customers was an improper basis for the district court's application of section 3B1.1(b). We therefore must examine the district court's alternative basis for its application of the enhancement: the trial testimony itself.

 The trial record contains sufficient evidence to support a conclusion that Appellant's criminal activity involved five participants. First, Appellant himself is a participant. Appellant clearly satisfies the Guidelines' definition of a participant in that he has been held criminally responsible for the commission of the offense. Furthermore, we have held that the defendant may be included among the participants in the criminal activity for purposes of section 3B1.1(a). *See United States v. Atkinson,* 966 F.2d 1270, 1277 & 1277 n. 8 (9th Cir.1992); *accord United States v. Preakos,* 907 F.2d 7, 10 (1st Cir.1990) (per curiam); *United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990). The same definition of a participant applies for subsection (b). Appellant is thus a participant.

Participant number two is Jennifer Featherman. Based on the analysis above, the evidence clearly supports a conclusion that Featherman was a participant in Appellant's criminal activities. The third participant is the unnamed subordinate that Featherman referred to in her trial testimony. Featherman testified that "there was actually another guy involved, too, and [Appellant] used him also." She explained that Appellant used them both so that "both of us could take the fall for [Appellant] and he wouldn't care, that was the point, as long as he didn't get in trouble." This testimony indicates that this other individual performed functions for Appellant similar to those Featherman performed. Although the individual was left unnamed, Featherman's testimony describes his involvement in Appellant's drug activities in some detail. As long as sworn testimony is sufficiently detailed for a reasonable court to conclude that an unnamed participant was involved in a criminal activity, the individual's anonymity will not preclude him from being counted as a participant. *See United States v. Narvaez,* 38 F.3d 162, 166 (5th Cir.1994) ("[T]he district court may consider unidentified participants when there is proof that they were involved in the precise transaction underlying the conviction.") There was sufficient evidence for the district court to count the unnamed individual as a participant.

The fourth and fifth participants are Gordon Eric Barraugh and his wife, Dolly. The district court found as a matter of fact that Barraugh was a participant in the conspiracy. Barraugh sold Appellant drugs in quantities large enough to allow for resale, and once loaned Appellant several hundred dollars. The understanding between Barraugh and Appellant appears to have been that Barraugh would front methamphetamine to Appellant on credit, and Appellant would repay Barraugh with the proceeds of Appellant's drug sales. Dolly Barraugh, Barraugh's then-wife, was charged as a codefendant and pled guilty. The PSR indicates that Dolly's involvement in her husband's drug selling activities was substantial. The Eighth Circuit

has held that a defendant's suppliers count as participants where "the suppliers knew he was going to resell the drugs." *Apfel*, 945 F.2d at 239. Thus, sufficient evidence supports the district court's determination that the Barraughs participated in the criminal activity. Based on these facts, the district court's conclusion that Appellant managed or supervised a criminal activity involving five or more persons was not clearly erroneous.

### IV.

 Appellant's final contention is that the evidence is insufficient to support his conviction. Appellant argues that Featherman and Barraugh were such unreliable witnesses that the jury was compelled to disbelieve their testimony as a matter of law. The jury considered the testimony of Barraugh and Featherman along with all the evidence bearing on their credibility. While it is true that Featherman and Barraugh have been convicted of crimes involving dishonesty in the past, and both have criminal records long enough to qualify them for black sheep status in most families, the jury was entitled to find their testimony credible notwithstanding Appellant's effort to impeach them. *See United States v. Leung*, 35 F.3d 1402, 1405 (9th Cir.1994).

Appellant points out that, at sentencing, the district court judge decided to believe aspects of Featherman's testimony and discredit others relating to the quantities of drugs sold by Appellant. That decision was not irrational. The trial court's decision was not clearly erroneous because although "Appellant on appeal challenges their credibility, there is no basis in the record to substitute our judgment for the decision of the district court on that issue." *United States v. Diaz-Rosas*, 13 F.3d 1305, 1308 (9th Cir.1994). More importantly, the decision of the district court judge to discredit a portion of Featherman's testimony does not make the jury's decision to believe portions of her testimony irrational, particularly where the district court credited portions of the testimony itself. The jury's reasonable decision in this case was rendered after consideration of the witnesses' credibility. In short, there was sufficient evidence to support Appellant's conviction and we will not disturb the jury's decision.

### V.

For the foregoing reasons, we AFFIRM the judgment of conviction and the sentence the district court imposed.