**UNITED STATES of America,
Plaintiff,**

v.

**Robert SCOTT, Defendant.**

**No. 99–30043.**

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 27, 2000.

**988**

Timothy A. Bass, Springfield, IL, for plaintiff.

Gregory B. Grigsby, Pana, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

*Apprendi* is the law of the land and is binding on this Court.

However, *Apprendi's* holding does not result in the sentence which Defendant seeks.

## I. BACKGROUND

On June 11, 1999, a federal grand jury indicted Defendant for conspiring to possess with the intent to distribute and to distribute marijuana and cocaine in violation of 21 U.S.C. § 841 and § 846. Defendant's trial began on November 29, 1999. On December 15, 1999, the jury informed the Court that it was deadlocked and unable to reach a unanimous verdict. Accordingly, the Court declared a mistrial.

Defendant's re-trial began on April 3, 2000. On April 13, 2000, the jury found Defendant guilty of conspiracy as charged in the indictment, and the Court ordered the United States Probation Office to prepare a Presentence Investigation Report ("PSR"). Defendant has now raised the following unresolved objections to his PSR.

## II. OBJECTIONS AND FINDINGS

### A. *APPRENDI*[1]

Defendant objects to the Court making factual findings regarding the type and amount of drugs which were distributed as part of the conspiracy of which he was convicted. Defendant argues that, pursuant to *Apprendi v. New Jersey,* —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court cannot make factual determinations regarding any matter which would increase his statutory penalty. Defendant asserts that, because the jury did not determine the type of drugs and the amount of drugs distributed as part of the conspiracy, the Court should sentence him pursuant to 18 U.S.C. § 371 which is the statutory penalty provision for the crime of conspiracy to defraud the United States and which carries a maximum penalty of five years.

■ Initially, the Court notes that even assuming, *arguendo,* that Defendant's *Apprendi* argument carries the day for him, his sentence is not governed by 18 U.S.C. § 371. Title 18 U.S.C. § 371 establishes the statutory penalty for the crime of conspiring to defraud the United States of

---

1. *"Apprendi* allows for only a sentencing challenge, not a challenge to the underlying con-

viction. . . ." *United States v. Meshack,* 225 F.3d 556, 577 (5th Cir.2000).

America or one of its agencies. Defendant was convicted of conspiring to possess with the intent to distribute and to distribute marijuana and cocaine in violation of 21 U.S.C. § 841(a)(1) and § 846. The applicable statutory penalty provisions for this crime is codified at 21 U.S.C. § 841(b). Thus, the best that Defendant can hope for—as far as his sentence is concerned—is that this Court sentences him pursuant to 21 U.S.C. § 841(b)(1)(D) which provides for a maximum sentence of ten years if the offense involved less than 50 kilograms of marijuana and involved no schedule I or II controlled substances. Title 18 U.S.C. § 371 is simply inapplicable to Defendant.[2]

█ Although the Court followed the well-established law in this circuit at trial, in light of *Apprendi*, there is little doubt that this Court erred in instructing the jury that it need not decide, beyond a reasonable doubt, what type of narcotic(s) Defendant conspired to possess with the intent to distribute and to distribute and erred in failing to instruct the jury to determine, beyond a reasonable doubt, the amount of drugs which were distributed as part of the conspiracy. *Apprendi*, —— U.S. at —— – ——, 120 S.Ct. at 2362–63. The United States Supreme Court explained in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* The jury in this cause did not determine beyond a reasonable doubt the type and quantity of drugs distributed in Defendant's conspiracy, and the Court erred in failing to instruct the jury to make these determinations.

█ However, the Court believes that its failure to do so constitutes harmless error. Because Defendant did not object to the Court's failure to instruct the jury to determine the type of drugs distributed as part of the conspiracy nor did he object to the Court's failure to instruct the jury to determine the amount of drugs distributed, he is only entitled to relief if the Court's error was "plain." Fed.R.Crim. Pro. 52(b); *see United States v. Garcia–Guizar*, 227 F.3d 1125; 1129 (9th Cir. 2000) (holding that "we may not grant him relief unless the *Apprendi* error was 'plain.'"); *see also United States v. Jenkins*, 2000 WL 1359666, * 1 (4th Cir. Sept.21, 2000) (same); *see also United States v. Nordby*, 225 F.3d 1053, 1060 (9th Cir.2000) (same); *see also United States v. Meshack*, 225 F.3d 556, 575–78 (5th Cir.2000) (same); *see also United States v. Sheppard*, 219 F.3d 766, 768–69 (8th Cir.2000) (same); *see also United States v. Mojica–Baez*, 229 F.3d 292, 306–07 (1st Cir.2000) (same); *see also United States v. Smith*, 223 F.3d 554 (7th Cir.2000) (same). In order to overcome harmless error, Defendant must prove that: "(1) there was 'error'; (2) the error was 'plain'; and (3) the error affected 'substantial rights.'" *Garcia–Guizar*, 227 F.3d at 1129, citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see Mojica–Baez*, 229 F.3d at 306 (noting that "[p]lain error review requires four showings: that there was error; that it was plain; that the error affected substantial rights; and that the error seriously affected the fairness, integrity or public reputation of judicial proceedings."). Defendant "bears the burden of showing prejudice under the plain error test." *Id.*

In the instant case, the Court has already conceded that it erred in instructing the jury. Moreover, the Court acknowledges that this error is now, in the subsequent light of *Apprendi*, "plain."[3] Howev-

---

**2.** In his amended commentary which he filed the day of sentencing, Defendant acknowledged that he should be sentenced pursuant to 21 U.S.C. § 841(b) rather than 18 U.S.C. § 371 as he had previously argued in his initial commentary to the United States Pro-

bation Office and which was filed with the Court.

**3.** The Court instructed the jury on April 12, 2000, and the United States Supreme Court decided *Apprendi* on June 26, 2000.

er, the Court does not believe that this error affected Defendant's substantial rights. The United States Court of Appeals for the Seventh Circuit recently explained the law on this issue as it relates to improper jury instructions:

Lanier predictably insists that the district court failure to provide the unanimity instruction was a "structural" constitutional error within the meaning of *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), which would require us to reverse Lanier's conviction without evaluating the prejudicial effect of the error. Such structural errors are so intrinsically harmful that they require automatic reversal of conviction. *See id.* at 310, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302. The government disagrees and insists that the absence of a unanimity instruction is subject to harmless error analysis. Fortunately, the Supreme Court's decision last term in *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), is helpful here.

In *Neder*, 119 S.Ct. at 1836, the Court held that omission of an element from the district court charge to the jury is not a structural constitutional error exempt from harmless error analysis. The Court explained that structural errors "infect the entire trial process," *id.* at 1833 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353, (1993)), and "necessarily render a trial fundamentally unfair." *Neder*, 119 S.Ct. at 1833 (quoting *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). The Court recognized that trial errors escape harmless error review only in a "very limited class of cases" and cited the example of "the complete deprivation of counsel or trial before a biased judge" because such a defect necessarily renders the trial fundamentally unfair and vitiates all the jury's findings of guilt. *Neder*, 119 S.Ct. at 1833. In contrast, omission of an element of a crime is not a structural defect, nor is an error involving improper instruction on a single element of an offense. *See id.* at 1833–34 (citing *California v. Roy*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (omission of an "intent or purpose" element of crime); *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (erroneous mandatory rebuttable presumption); *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (erroneous mandatory conclusive presumption); *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (wrong standard for guilt)). An erroneous jury instruction on only one element of the crime draws harmless error analysis because the error does not pervade the entire judicial proceeding and render its outcome categorically unreliable or unjust.

*Lanier v. United States*, 220 F.3d 833, 838 (7th Cir.2000).

The Court finds that its failure to instruct the jury to determine the type and quantity of drugs distributed as part of Defendant's conspiracy did not affect his substantial rights because a reasonable jury could not have found beyond a reasonable doubt that the conspiracy involved no amount of cocaine. "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder v. United States*, 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In other words, a district court should "ask[ ] whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not 'reflec[t] a denigration of the constitutional rights involved.'" *Id.* at 20, 119 S.Ct. 1827, quoting *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

Every witness at Defendant's trial testified that the conspiracy involved *both* marijuana and cocaine. Moreover, as set forth in more detail *infra*, Defendant's co-conspirators admitted when they pleaded guilty in their cases before this Court that the instant conspiracy involved both marijuana and cocaine. Finally, Defendant has never denied (either during the trial or now at sentencing) that the conspiracy involved cocaine; rather, he merely denies that he was a member of the conspiracy—a defense which the jury rejected. Accordingly, the Court finds beyond a reasonable doubt that, based upon the evidence presented at trial, a rational jury could come to no other conclusion than that the conspiracy in which Defendant was involved and of which he was convicted distributed at least some amount of cocaine. Thus, the Court's failure to instruct the jury to determine the type of drug distributed as part of the conspiracy was harmless because the failure did not affect Defendant's substantial rights, nor did the error seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *Lanier*, 220 F.3d at 838.

Because the conspiracy involved at least some amount of cocaine, Defendant's statutory maximum penalty is 30 years. The indictment cited to 21 U.S.C. § 841(b)(1)(B) as the penalty provision governing Defendant's offense. This statute provides for a mandatory minimum of ten years to life if the defendant has a prior felony drug conviction and distributed either 500 grams or more of cocaine or 100 kilograms or more of marijuana. *Apprendi* teaches that district courts can no longer decide facts, such as drug amounts, if it elevates a defendant's maximum statutory exposure. *Apprendi*, —— U.S. at —— ——, 120 S.Ct. at 2362–63.

■ Therefore, the Court believes that the proper penalty provision in this case is 21 U.S.C. § 841(b)(1)(C). Title 21 U.S.C. § 841(b)(1)(C) is a lesser included offense section of § 841(b)(1)(B) and provides for a statutory maximum penalty of 20 years if the offense involved any amount of a schedule I or II controlled substance or 30 years if the defendant has a prior felony drug conviction. Because Defendant was convicted of conspiracy, he is held accountable for the drugs which were reasonably forseeably distributed as part of the conspiracy. *United States v. Whitt*, 211 F.3d 1022, 1028 n. 11 (7th Cir.2000). Because cocaine is a schedule II controlled substance, § 841(b)(1)(C) applies. Finally, because § 841(b)(1)(C) provides for a 30 year statutory maximum penalty in this case (Defendant has a prior felony drug conviction) and because Defendant's sentencing guideline range is less than 30 years (his guideline range is 262 to 327 months), *Apprendi* is inapposite. *See Garcia–Guizar*, 227 F.3d at 1129 (holding that because the court sentenced the defendant to a term below the applicable statutory minimum, *Apprendi* did not apply); *see also United States v. Egge*, 223 F.3d 1128, 1132 n. 1 (9th Cir.2000) (same); *see also Meshack*, 225 F.3d at 575–76 (same); *see also United States v. Aguayo–Delgado*, 220 F.3d 926, 934 (8th Cir.2000) (same). Accordingly, Defendant's objection to the PSR based upon *Apprendi* is denied.[4]

## B. *AMOUNT OF DRUGS*

Defendant also objects to paragraphs 14, 15, 16, 17, and 23 which hold him accounta-

---

4. An argument could be made that the jury did make a factual finding that Defendant's conspiracy distributed cocaine because the jury's verdict stated that "We, the jury, find the Defendant, Robert Scott, guilty of the offense of conspiracy to possess with the intent to distribute or to distribute marijuana *and* cocaine as charged in the indictment." (emphasis added). *See United States v. Sheppard*, 219 F.3d 766, (8th Cir.2000) (holding that *Apprendi* did not apply where the jury made a "special finding" of drug type and amounts). Likewise, an argument could be made that, based upon the evidence presented at trial, no reasonable jury could find beyond a reasonable doubt that Defendant's conspiracy distributed less than 110 pounds of marijuana. However, because it is clear beyond a reasonable doubt that the conspiracy involved at least some amount of cocaine, the Court need not base its Opinion upon either of these factors.

ble for the equivalent of 2,500.18 kilograms of marijuana.[5] In addition to objecting to these paragraphs based upon *Apprendi*, Defendant argues that, although the amount of drugs for which he is being held accountable in these paragraphs is based upon statements made to law enforcement officials by his co-conspirators and other witnesses, when these witnesses testified at trial, they contradicted their previous statements regarding the drug amounts distributed as part of the conspiracy. Accordingly, Defendant claims that the information contained within these paragraphs is unreliable and that he should not be held accountable for the drug amounts set forth therein.

However, the trial testimony of Defendant's co-conspirators and the other witnesses clearly establish that the conspiracy involved the equivalent of at least 1,000 kilograms of marijuana, *i.e.*, the minimum threshold amount for Defendant to receive a base offense level of 32. *See United States v. Henderson*, 105 F.Supp.2d 523, 527 n. 8 (S.D.W.Va.2000) (holding that "*Apprendi* now prohibits a sentencing judge from making factual determinations that increase statutory penalties. *Apprendi* does not, however, extend so far as to preclude judges from determining the drug amount for purposes of relevant conduct."). As the Court stated *supra*,

> [i]n a drug conspiracy, each conspirator is responsible not only for amounts with which he was directly involved, but also for amounts involved in transactions by

co-conspirators that were reasonably foreseeable to him. *Cotts*, 14 F.3d at 305; *Goines*, 988 F.2d at 775. "[R]easonable foreseeability means more than subjective awareness on the part of the individual defendants.... Instead, conduct of co-conspirators ... can be considered 'reasonably foreseeable' to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct." *United States v. Edwards*, 945 F.2d 1387, 1393–94 (7th Cir.1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

*United States v. Zarnes*, 33 F.3d 1454, 1474 (7th Cir.1994).

 The Court finds that Defendant should be held accountable for the full amount of the drugs distributed during the conspiracy because the evidence presented at his trial establishes that he had a substantial degree of commitment to the conspiracy's objective of distributing cocaine and marijuana in the Taylorville, Illinois, area. In fact, Defendant's role in the conspiracy was both substantial and crucial. Shawn Jones [6] (a co-conspirator) testified before the grand jury [7] that Defendant was the "money man" for Defendant's brother Billy Scott (an unindicted co-conspirator) which enabled Billy Scott to purchase cocaine and marijuana from Charles Kelsay.[8] Kelsay was the conspiracy's drug source in

---

5. Because Defendant's conspiracy distributed both marijuana and cocaine, the Court converted the drugs into marijuana equivalents for sentencing purposes. U.S.S.G. § 2D1.1, commt. n. 10.

6. In case number 94–30016 before this Court, a jury found Jones guilty of conspiring to possess with the intent to distribute and to distribute marijuana and cocaine and found him guilty of possession with the intent to distribute marijuana and cocaine. Based upon these convictions, this Court sentenced Jones to 144 months of imprisonment.

7. The Court allowed the Government to use Jones' grand jury testimony because he re-

peatedly refused to testify at Defendant's trial. Accordingly, the Court found, by a preponderance of the evidence, that Jones was unavailable to testify, pursuant to Federal Rule of Evidence 804(a)(2), because Defendant had wrongfully procured Jones' absence as a witness in this case. Based upon this finding, the Court also found that Defendant had waived his Sixth Amendment confrontation rights and his hearsay objection to the admission of Jones' grand jury testimony.

8. In the instant case, Kelsay pleaded guilty to conspiring to possess with the intent to distribute and to distribute marijuana and cocaine, and this Court sentenced him to 90 months of imprisonment.

Chicago, Illinois, and was a co-Defendant in this case.

Jones also testified that after Defendant and Billy Scott had a falling out, Defendant gave him money to purchase drugs in Chicago:

Q. Approximately how much would Bob Scott give you to purchase drugs?

A. On the average anywhere from 5 to 10,000 dollars on each trip, just depended on what he wanted. It always fluctuated.

(Tr. 13). Molly Rahar, Billy Scott's ex-girlfriend, corroborated Jones' testimony when she testified at trial that Defendant gave money to Billy Scott to purchase cocaine and marijuana from Kelsay in Chicago which he brought back to Taylorville and gave to Defendant.

In addition, several witnesses, including Rahar and co-conspirators Timothy Burnett[9] and Ronald Cooper,[10] testified that the drugs which were obtained from Kelsay in Chicago as part of the conspiracy were brought back and divided among the co-conspirators at Defendant's lake house. Billy Chance, an inmate at the Sangamon County jail who was assigned to the same cell block as Defendant, corroborated this testimony when he testified at trial as follows:

Q. Did the defendant tell you anything about what happened with the drugs after they were returned to Taylorville? In terms of where they would be brought.

A. He told me that either his lake lot or his residence or at his bar.

 \* \* \* \* \* \*

Q. What did he tell you about the lake lot?

A. He told me that he had a lot of parties out at his lake lot and that he sold a lot of drugs out there at those parties.

(Tr. 20, 21). Therefore, it is clear, based upon the evidence at trial, that Defendant played a major role in this conspiracy from its inception and that he should be held accountable for the full amount of the drugs possessed with the intent to distribute and distributed as part of the conspiracy.

■ It is also clear that the conspiracy involved the equivalent of at least 1,000 kilograms of marijuana. Jones testified before the grand jury as follows:

Q. How many—on how many occasions did you go to Chicago where Bob Scott gave you money to purchase drugs?

A. Numerous. I mean I couldn't give you an exact figure because there was so many.

Q. More than ten?

A. Yes, yes, more than ten.

(Tr. 13–14). Likewise, Chance testified:

Q. Again, what was the—what did the defendant tell you about the relation of Mr. Jones in terms of the frequency of trips to Chicago and the weight of drugs involved and the type of drugs involved?

A. He told me that Jones would go to Chicago and get 10 to 12 pounds of pot and up to six ounces of cocaine three to four times a month and that he would give him anywhere from 10 to 15 grand to pay for the drugs. He also told me that sometimes on his drug runs on the way back en route to Taylorville he

9. In case number 94–30021 before this Court, Burnett pleaded guilty to conspiring to possess with the intent to distribute and to distribute marijuana and cocaine and pleaded guilty to possession with the intent to distribute marijuana and cocaine. Based upon these convictions, this Court sentenced Burnett to 91 months of imprisonment.

10. In case number 94–30017 before this Court, Cooper pleaded guilty to conspiring to possess with the intent to distribute and to distribute marijuana and cocaine and pleaded guilty to possession with the intent to distribute marijuana and cocaine. Based upon these convictions, this Court sentenced Cooper to 108 months of imprisonment.

would have Jones drop off drugs at various locations.

(Tr. 20). Finally, Rahar estimated that the conspiracy involved between 400 and 500 pounds of marijuana and between 40 and 50 ounces of cocaine; Burnett testified that on his trips to Chicago, he obtained between 10 and 15 pounds of marijuana and between four and twelve ounces of cocaine; and Cooper testified that on his trips to Chicago, he obtained between 15 and 25 pounds of marijuana and between three and eight ounces of cocaine.

Furthermore, in sentencing Defendant's co-conspirators, the Court has previously found that the instant conspiracy involved the equivalent of at least 1,000 kilograms of marijuana. Based upon the evidence set forth above and the other evidence presented at trial, it is abundantly clear that the conspiracy of which Defendant was convicted distributed the equivalent of at least 1,000 kilograms of marijuana. Accordingly, Defendant's objections to paragraphs 14, 15, 16, 17, and 23 are denied.

## C. *CRIMINAL HISTORY*

Defendant also objects to paragraphs 37, 38, 39, and 40 which set forth part of his past criminal conduct. Defendant argues that, because he was not assessed any criminal history points as a result of the conduct contained within these paragraphs, the information should not be contained within his PSR.

However, because Defendant's objections to these paragraphs do not affect sentencing, the Court declines to make a factual finding on those objections pursuant to Federal Rule of Criminal Procedure 32(c)(1).

In addition, the United States Probation Office is required to include this information in Defendant's PSR regardless of whether any criminal history points are added. Fed.R.Crim.Pro. 32(b)(4)(A).

## D. *REASONS FOR THE SENTENCE*

■ Finally, 18 U.S.C. § 3553(c) requires the Court to state the reasons for the sentence imposed. Here, the Court believes that a sentence at the high end of Defendant's applicable sentencing guideline range is appropriate for several reasons. *First,* few criminal defendants who have appeared before this Court have had as extensive a criminal history background as Defendant. Defendant's criminal history shows a complete and utter disregard for the rules of society.[11] Beginning at age 13 and continuing (with little interruption) until today, Defendant has been engaged in criminal activity. In short, Defendant is a recidivist from whom society needs protection.

*Second,* Defendant's past criminal conduct displays a contempt for law enforcement. On at least four occasions, Defendant's criminal conduct has revealed his disdain for police officers. For example, on one occasion, Defendant struck a police officer and impeded the officer's attempts to get into his squad car. On another occasion, Defendant placed a police officer in a choke hold. On yet another occasion, Defendant kicked, spat upon, and threatened the life of a police officer.

*Third,* Defendant has failed to show any remorse or acceptance of responsibility for his crime. *United States v. Ward,* 211 F.3d 356, 366–67 (7th Cir.2000). On the contrary, Defendant has repeatedly denied association in the instant conspiracy despite the overwhelming evidence presented at trial to the contrary. For these reasons, the Court believes that a sentence at the high end of the guideline range is appropriate. 18 U.S.C. § 3553(c).

*Ergo,* Defendant's Objections to the Presentence Investigation Report are DENIED. Therefore, Defendant has an adjusted offense level of 34 and a criminal history within category VI, yielding a sen-

---

**11.** In addition, Defendant obstructed justice by successfully procuring the absence of Jones as a witness in this case.

tencing range of 262 to 327 months of imprisonment.

Accordingly, Defendant is hereby sentenced to 326 months of imprisonment to be followed by a 6 year term of supervised release upon being discharged from the Bureau of Prisons. Defendant is ordered to pay a special assessment of $100.00 immediately. No fine or restitution is ordered. Finally, the Court recommends to the Bureau of Prisons that Defendant be placed in a facility as close to Taylorville, Illinois, as possible.