NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50360 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-04217-LAB-1 |
| v. | |
| JESUS ALFREDO RAMIREZ, AKA Chuy, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted August 5, 2021
Pasadena, California

Before: PAEZ, CALLAHAN, and HURWITZ, Circuit Judges.

Following a jury trial, Jesus Ramirez was convicted of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846; he received a below-Guidelines sentence of twenty years. We affirm the conviction and sentence.

1. Ramirez argues that the district court erred both procedurally and substantively in finding that the affidavit offered by the government in support of a

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

wiretap warrant[1] contained "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(1)(c), and in finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," *id.* § 2518(3)(c). Because we must independently consider the affidavit's sufficiency even if procedural error occurred, we assume procedural error arguendo and proceed to the substantive issues. *See United States v. Rodriguez*, 851 F.3d 931, 938 (9th Cir. 2017).

Our *de novo* review of the affidavit confirms that it complies with § 2518(1)(c). The affidavit first describes the probable cause for believing the target of the proposed wiretap, Gonzalez, participated in the conspiracy, and offers a detailed accounting of the investigative methods pursued to date. *See United States v. Christie*, 825 F.3d 1048, 1066–68 (9th Cir. 2016). It then details the "inadequacy of normal investigative techniques" on a category-by-category basis, giving numerous reasons specific to Gonzalez and his putative co-conspirators. *See id.* at 1068–69. To be sure, the affidavit contains some boilerplate conclusions, but "as a whole [it] speaks in case-specific language." *See United States v. Garcia-Villalba*,

---

[1] Ramirez can only contest the validity of the August 13, 2018, wiretap application. *See United States v. Oliva*, 705 F.3d 390, 395 (9th Cir. 2012); *United States v. Kahre*, 737 F.3d 554, 565 (9th Cir. 2013) (per curiam).

585 F.3d 1223, 1230 (9th Cir. 2009); *see also Rodriguez*, 851 F.3d at 942.

Nor did the district court abuse its discretion in concluding that § 2518(3)(c) was satisfied because the wiretap was essential to the investigation. *See Rodriguez*, 851 F.3d at 938. The government was investigating what it believed to be a far-reaching methamphetamine distribution conspiracy with links to local gangs and foreign sources. *See United States v. Reed*, 575 F.3d 900, 909 (9th Cir. 2009) ("The issuing court has considerable discretion in finding necessity, particularly when the case involves the investigation of a conspiracy."). It sought the wiretap only after employing numerous alternative techniques over several months. *See United States v. McGuire*, 307 F.3d 1192, 1196–97 (9th Cir. 2002) ("[L]aw enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap."). And it explained, in case-specific terms, why those techniques had not produced information needed to "develop an effective case against those involved in the conspiracy." *See Reed*, 575 F.3d at 909 (cleaned up).

2.     The district court did not plainly err by not *sua sponte* giving a specific unanimity instruction because the evidence did not clearly establish more than "one overall agreement to perform various functions to achieve the objectives of the conspiracy." *United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir. 1983) (cleaned up). Ramirez imported product from Tijuana at $1,550 per pound, fronted it to Esho at $1,600 to $1,700 per pound, and was paid after resale. Ramirez had

3

"reason to know[] that other retailers" were involved in the conspiracy. *Id.* at 1458 (cleaned up). Although Esho's arrest ended his role in the conspiracy, Gonzalez "kept it going" by stepping into Esho's shoes. *See United States v. Patterson*, 819 F.2d 1495, 1502 (9th Cir. 1987).

3. The district court did not plainly err by not *sua sponte* addressing the prosecutor's questions to the venire because the questions were not obviously problematic. *United States v. Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) (standard of review for plain error). Rather, they appeared targeted "to ferret out prejudices in the venire and to remove partial jurors." *United States v. Steele*, 298 F.3d 906, 912 (9th Cir. 2002) (cleaned up). Asking one venireperson, a Child Protective Services worker, whether he would have a "gut reaction" or "strong reaction" to Ramirez using his child in his drug dealing touched on something that would be the subject of evidence. And hypothetically asking whether the venire would hold it against the government for "wasting [its] time" if it found the evidence "overwhelming" is neither on its face an inappropriate endorsement of the government's case, *compare United States v. Ruiz*, 710 F.3d 1077, 1085–86 (9th Cir. 2013), nor clearly intended to bias the jury against Ramirez.

4. In imposing an aggravated role enhancement, the district court did not misinterpret Guideline 3B1.1(b). The court's comments in imposing the enhancement largely targeted the relevant lodestar, Ramirez's "relative

4

responsibility." *United States v. Egge*, 223 F.3d 1128, 1133 (9th Cir. 2000); U.S.S.G. § 3B1.1(b) cmt. background. Nor did the court abuse its discretion in applying the Guideline. As the importer and supplier of methamphetamine, Ramirez bore more "relative responsibility" than the individual dealers who simply came to him for product. *See Egge*, 223 F.3d at 1133. And the evidence supported the requisite finding that Ramirez "supervised or exercised some degree of control over at least one participant in an extensive criminal scheme." *See United States v. Herrera*, 974 F.3d 1040, 1046 (9th Cir. 2020); *see also, e.g.*, *United States v. Garcia*, 497 F.3d 964, 970 (9th Cir. 2007) (applying enhancement where defendant exercised control over another by fronting her drugs "while threatening to harm her if she did not repay him"); *United States v. Franco*, 136 F.3d 622, 631 (9th Cir. 1998) (applying enhancement where defendant asked participant to run an errand for him and to set up a drug transaction).

**AFFIRMED.**